706 S.E.2d 513

**The STATE, Respondent,**

v.

**Karriem PROVET, Appellant.**

**No. 4787.**

Court of Appeals of South Carolina.

Heard May 18, 2010.

Decided Jan. 31, 2011.

Rehearing Denied March 23, 2011.

Tricia A. Blanchette, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Deborah R.J. Shupe, Office of the Attorney General, all of Columbia; Solicitor Robert Mills Ariail, of Greenville, for Respondent.

WILLIAMS, J.

On appeal, Karriem Provet (Provet) argues the trial court erred in denying his motion to suppress the evidence resulting from a traffic stop because the police subjected him to an unreasonable search and seizure in violation of the Fourth Amendment. We affirm.

## FACTS

On the night of May 1, 2002, Corporal John Owens (Owens) of the South Carolina Highway Patrol was patrolling on Interstate 85 in Greenville County, South Carolina, when he observed a 1997 Ford Expedition (the vehicle). The vehicle had a burned out tag light and was following another vehicle too closely. Subsequently, Owens commenced a traffic stop and asked Provet for his driver's license and vehicle registration. During the stop, Owens observed Provet's hands were noticeably shaking and his breathing was accelerated. Additionally, there were numerous air fresheners in the vehicle.

Upon checking Provet's vehicle registration, Owens learned the vehicle was registered to a third-party. Owens then asked Provet to exit the vehicle and proceeded to perform a pat down search of Provet.

After Provet exited the vehicle, Owens asked Provet a series of questions. Owens inquired where Provet was coming from, and Provet responded he had been visiting his girlfriend at a nearby Holiday Inn. Owens testified he knew Provet was not coming from the Holiday Inn because he observed the traffic violation prior to where the Holiday Inn exit was located. Owens then asked Provet if he knew the location of the Holiday Inn exit. Provet did not know the location. Owens questioned Provet about the vehicle's third-party registration, his employment status, and the duration of his stay in Greenville. Provet informed Owens that the vehicle's owner was another girlfriend who lived in Charlotte, North Carolina. He stated that he recently graduated from a technical institution but was unemployed. Provet informed Owens he was in Greenville for two days but was not carrying any luggage. Based on Provet's responses, Owens believed Provet was deceptive, prompting Owens to call Trooper Eddie Aman (Aman), an officer assigned with the drug detection canine unit, to report to the scene.

After contacting Aman, Owens returned to Provet's vehicle to check the vehicle identification number. When looking through the front windshield, Owens observed several air fresheners, numerous fast food bags, a cell phone, and some receipts. Consistent with Provet's admission at the commencement of the stop, Owens stated he saw no luggage in the vehicle, only one bag on the rear seat. However, Owens later stated that there was a luggage bag on the rear seat. When subsequently asked to clarify his observations regarding the bag on the rear seat at trial, Owens stated that he did not recall whether the bag was a luggage bag. Despite this apparent inconsistency regarding the presence of luggage, Owens' experience and observations caused him to conclude Provet was involved in criminal activity.

Owens returned Provet's driver's license and vehicle registration and then issued a traffic warning citation. After explaining the warning citation, Owens immediately asked

Provet whether he had anything illegal in the vehicle. Provet responded in the negative. Owens then asked to search the vehicle, and Provet consented to the search. As Aman was attempting to remove a fast food bag as a precautionary measure for the drug detection canine, Provet fled the scene, running across six lanes of traffic on Interstate 85. Provet was apprehended. The drug detection canine alerted to the cocaine in the fast food bag. Provet was indicted by a Greenville County grand jury for resisting arrest and trafficking cocaine more than 100 grams.[1]

Before trial, Provet made a motion to suppress the cocaine because it was obtained through an illegal search. The trial court denied Provet's motion and concluded Owens had probable cause to conduct a traffic stop and reasonable suspicion of a serious crime. The trial court found Provet's consent was voluntarily given. A jury convicted Provet, and the trial court sentenced him to twenty-five years imprisonment. This appeal followed.

## STANDARD OF REVIEW

In Fourth Amendment cases, the trial court's factual rulings are reviewed under the "clear error" standard. *State v. Brockman*, 339 S.C. 57, 66, 528 S.E.2d 661, 666 (2000). Under the "clear error" standard, an appellate court will not reverse a trial court's findings of fact simply because it would have decided the case differently. *State v. Pichardo*, 367 S.C. 84, 96, 623 S.E.2d 840, 846 (Ct.App.2005). Therefore, we will affirm if there is any evidence to support the trial court's rulings. *State v. Khingratsaiphon*, 352 S.C. 62, 70, 572 S.E.2d 456, 460 (2002).

## LAW/ANALYSIS

### A. Detention

Provet does not appeal the trial court's ruling that Owens had probable cause to conduct a traffic stop of the vehicle

---

1. South Carolina Code section 44–53–370(e)(2)(c)–(e) (2002) classifies "trafficking in cocaine" in the following weight amounts: one hundred grams or more, but less than two hundred grams; two hundred grams or more, but less than four hundred grams; and four hundred grams or more.

based on his observation that Provet was following another vehicle too closely and had a burned out tag light. However, Provet contends his detention was unlawfully prolonged because Owens' questioning of Provet was unrelated to the traffic stop. We disagree.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend. IV. The Fourth Amendment protects against unreasonable searches and seizures, including seizures that involve only a brief detention. *Pichardo*, 367 S.C. at 97, 623 S.E.2d at 847 (citing *United States v. Mendenhall*, 446 U.S. 544, 551, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). The temporary detention during an automobile stop, even if only for a brief and limited purpose, constitutes a seizure under the Fourth Amendment. *Pichardo*, 367 S.C. at 97, 623 S.E.2d at 847 (citing *Whren v. United States*, 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). Generally, the decision to conduct a traffic stop is reasonable when the police have probable cause to believe a traffic violation has occurred. *Whren*, 517 U.S. at 810, 116 S.Ct. 1769.

During the traffic stop, Owens asked Provet where he was coming from, where the Holiday Inn was located, his employment status, and the duration of his stay in Greenville. In addition, he inquired about the vehicle's third-party registration. We conclude Owens' questions were tangentially related to the traffic stop. *See State v. Rivera*, 384 S.C. 356, 359, 682 S.E.2d 307, 309 (Ct.App.2009) (concluding officer's questions concerning where the defendants were coming from, how long they had been there, where they were going, and the purpose of their trip were tangentially related to the purpose of the traffic stop). Moreover, even if Owens' questioning of Provet was unrelated to the purpose of the traffic stop, Provet's argument is not persuasive because the Fourth Amendment does not per se prohibit questions unrelated to the purpose of the traffic stop unless the unrelated questions unreasonably extend the traffic stop's duration. In this case, we conclude Owens did not unreasonably extend the traffic stop, because the entire traffic stop amounted to less than eleven minutes. Furthermore, Owens' series of questions and

observations occurred prior to the conclusion of the traffic stop because Owens was waiting to hear from dispatch regarding Provet's license and registration, and a warning citation had yet to be issued. As a result, we conclude the traffic stop was not unreasonably extended. *See Arizona v. Johnson,* 555 U.S. 323, 129 S.Ct. 781, 788, 172 L.Ed.2d 694 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."); *see also United States v. Jeffus,* 22 F.3d 554, 557 (4th Cir.1994) (approving fifteen minute traffic stop).

## B. Reasonable Suspicion

Provet argues Owens did not have reasonable suspicion of a serious crime. We disagree.

■ Lengthening the detention for further questioning beyond that related to the initial stop is acceptable in two situations: (1) the officer has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring; or (2) the initial detention has become a consensual encounter. *Pichardo,* 367 S.C. at 99, 623 S.E.2d at 848 (citing *United States v. Hunnicutt,* 135 F.3d 1345, 1349 (10th Cir. 1998)). Reasonable suspicion requires a particularized and objective basis that would lead one to suspect another of criminal activity. *State v. Woodruff,* 344 S.C. 537, 546, 544 S.E.2d 290, 295 (Ct.App.2001) (citing *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). In determining whether reasonable suspicion exists, the trial court must consider the totality of the circumstances. *State v. Willard,* 374 S.C. 129, 134, 647 S.E.2d 252, 255 (Ct.App.2007). Generally stated, reasonable suspicion is a standard that requires more than a "hunch" but less than probable cause. *Id.* Reasonable suspicion "is not readily, or even usefully, reduced to a neat set of legal rules, but, rather, entails common sense, nontechnical conceptions that deal with factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act." *United States v. Foreman,* 369 F.3d 776, 781 (4th Cir.2004). Therefore, courts must "consider the totality of the circumstances" and "give due weight to common sense judgments reached by officers in

light of their experience and training." *United States v. Perkins*, 363 F.3d 317, 321 (4th Cir.2004). "Reasonableness is measured in objective terms by examining the totality of the circumstances. As a result, the nature of the reasonableness inquiry is highly fact-specific." *State v. Tindall*, 388 S.C. 518, 527, 698 S.E.2d 203, 208 (2010).

In support of his argument that Owens lacked reasonable suspicion, Provet cites *State v. Rivera*, 384 S.C. 356, 682 S.E.2d 307 (Ct.App.2009). In *Rivera*, an officer stopped Rivera for following another vehicle too closely. *Id.* at 359, 682 S.E.2d at 309. During the stop, the officer asked Rivera to step out of the vehicle and asked where he and the passenger, Medero, were coming from, how long they had been there, where they were going, and the purpose of their trip. *Id.* Rivera and Medero gave conflicting stories regarding the purpose of their trip. *Id.* The officer informed Rivera he would receive a traffic warning citation and then proceeded to call for backup. *Rivera*, 384 S.C. at 359–60, 682 S.E.2d at 309. The officer then discussed the transport of drugs on the interstate and asked if any weapons, drugs, or large sums of money were in the vehicle. *Id.* Rivera replied in the negative. *Id.* at 360, 682 S.E.2d at 309. The officer subsequently asked for permission to search the vehicle, and Rivera consented. *Id.* The search revealed heroin in the vehicle's engine. *Rivera*, 384 S.C. at 360, 682 S.E.2d at 309.

At trial, Rivera and Medero moved to suppress the evidence on the basis that the traffic stop was unlawfully prolonged and the consent was invalid. *Id.* The trial court granted the suppression motion on the basis that the officer lacked "sufficient indicators of criminal activity to justify any continued detention" beyond the purpose of the traffic stop. *Id.* In granting deference to the trial court because of the "any evidence" standard of review, this court upheld the trial court's suppression of the evidence. *Id.* at 363, 682 S.E.2d at 311.

First, this court found the rental vehicle was lawfully detained and the officer's questioning of Rivera and Medero regarding the purpose, destination, and duration of their trip was reasonably related to the traffic stop. *Rivera*, 384 S.C. at 362, 682 S.E.2d at 310. However, this court found the purpose

of the traffic stop was accomplished when the officer informed Rivera he would receive a warning citation. *Id.* As a result, our court concluded the officer's discussion concerning the transport of drugs on the interstate exceeded the scope of the traffic stop and constituted a second and illegal detention unless the continued detention was supported by reasonable suspicion. *Id.*

In analyzing whether the officer had reasonable suspicion, this court found Rivera and Medero's nervousness standing alone did not create suspicion of criminal behavior, and their stories were not so inconsistent as to indicate criminal behavior. *Id.* at 362–63, 682 S.E.2d at 310–11. Furthermore, this court found the absence of luggage in the back seat did not provide reasonable suspicion particularly when the trunk, the usual place for luggage, "was filled" with suitcases. *Rivera,* 384 S.C. at 363, 682 S.E.2d at 311. Finally, this court found that there was no evidence of air fresheners located in the vehicle based on the trial court's order. *Id.*

■ Similar to *Rivera,* Owens' questions concerning Provet's destination and the purpose of his trip were reasonably related to the traffic stop, but unlike in *Rivera,* there are additional factors to be considered in this case. Owens testified Provet's vehicle contained several air fresheners. Additionally, Provet admitted he did not have any luggage for his two-day stay in Greenville.

Further, we note our supreme court's recent decision in *Tindall.* In *Tindall,* an officer stopped Tindall for speeding, following another vehicle too closely, and failing to maintain his lane. *Tindall,* 388 S.C. at 520, 698 S.E.2d at 204. The officer asked Tindall for his driver's license, registration, insurance, and the rental car agreement. *Id.* at 522, 698 S.E.2d at 205. The officer then asked Tindall to exit his vehicle and to sit in the patrol car. *Id.* While Tindall was exiting his vehicle, the officer testified that Tindall did a "felony stretch." [2] *Id.* The officer subsequently patted down Tindall and placed him in the patrol car. *Tindall,* 388 S.C. at 522, 698 S.E.2d at 205. At this point, the officer questioned

---

**2.** According to the officer's testimony, a "felony stretch" occurs when an individual raises his hands in a stress relief action. *Tindall,* 388 S.C. at 522, 698 S.E.2d at 205.

Tindall regarding his destination, and Tindall informed the officer he was visiting his brother in Durham, North Carolina. *Id.* The officer called in Tindall's driver's license and registration to dispatch. *Id.* Approximately three minutes later, dispatch reported no problems with Tindall's driver's license and vehicle, and the officer told Tindall he would write him a warning ticket. *Id.* However, the officer refused to issue the ticket at this point and continued to question Tindall for approximately another six to seven minutes regarding "where he was going," "the purpose of the trip," "what exit he would take to get to Durham," "whether he had ever been charged with any drug crimes," "what type of business he was in," and "various questions about his business." *Tindall,* 388 S.C. at 522, 698 S.E.2d at 205.

Approximately fifteen to twenty minutes into the traffic stop, the officer asked Tindall if he could search his vehicle, and Tindall replied, "I don't care" or "I don't mind." *Id.* at 520, 698 S.E.2d at 204. The search revealed a substantial amount of cocaine. *Id.* at 520–21, 698 S.E.2d at 204. Tindall was convicted of trafficking cocaine in excess of four hundred grams and assessed a $250,000 fine. *Id.* at 520, 698 S.E.2d at 204. On appeal to our supreme court, Tindall argued the court of appeals erred in affirming the trial court's denial of his motions to suppress the cocaine and his statement to the police. *Tindall,* 388 S.C. at 520, 698 S.E.2d at 204.

Our supreme court held the "officer's continued detention of Tindall exceeded the scope of the traffic stop and constituted a seizure for purposes of the Fourth Amendment." *Id.* at 522, 698 S.E.2d at 205. The court found the purpose of the traffic stop was accomplished when the dispatcher reported no problems with Tindall's driver's license and vehicle, and the only remaining task was the issuance of the warning ticket. *Id.* The court concluded the continued questioning of Tindall exceeded the scope of the traffic stop and constituted a seizure under the Fourth Amendment. *Id.* Specifically, the court stated, "[A] reasonable person in Tindall's position—seated in the front seat of the patrol car with two officers standing at his door, another officer to his left, and a police dog in the back seat—would not have felt free to terminate the encounter." *Tindall,* 388 S.C. at 522–23, 698 S.E.2d at 205.

Our supreme court next analyzed whether the officer had reasonable suspicion of a serious crime when he chose not to conclude the traffic stop, despite his stated intention to issue a warning ticket. At the time of the continued detention, the officer discovered the following: (1) "Tindall was driving to Durham to meet his brother"; (2) "Tindall was driving a rental car rented the previous day by another individual which was to be returned to Atlanta on the day of the stop"; (3) "Tindall did a 'felony stretch' on exiting the vehicle"; and (4) "Tindall seemed nervous." *Id.* at 523, 698 S.E.2d at 206. The court concluded these facts did not provide a sufficient basis for reasonable suspicion. *Id.* Therefore, the supreme court reversed the trial court's ruling on the motion to suppress the cocaine. *Id.* Additionally, the supreme court held Tindall's consent to the search of his vehicle was invalid because it was the product of an unlawful detention under the Fourth Amendment. *Id.*

We conclude the present case is distinguishable from *Tindall.* In *Tindall,* the officer questioned Tindall for approximately six to seven minutes after the purpose of the traffic stop was accomplished, and thus, a continued detention occurred. *Tindall,* 388 S.C. at 522, 698 S.E.2d at 205. Conversely, Owens' series of questions and observations occurred prior to the conclusion of the traffic stop because Owens was waiting to hear from dispatch regarding Provet's license and registration and a warning citation had yet to be issued. We conclude Owens developed his reasonable suspicion as a result of additional factors that were not present in *Tindall.*

In the case at hand, the trial court found reasonable suspicion existed to support Owens' further detention of Provet based on Owens ascertaining (1) Provet was nervous as displayed by extreme shaking of the hands and accelerated breathing, (2) third-party vehicle registration is very common in drug trafficking, (3) Provet's admission to visiting one girlfriend while driving a different girlfriend's vehicle, (4) Provet's claim he was coming from the Holiday Inn even though the traffic violation occurred prior to that hotel's exit, (5) Provet's presence in Greenville for two days without any luggage, (6) the presence of numerous fast food bags, a cell

phone, and some receipts in Provet's vehicle,[3] and (7) the presence of several air fresheners in the vehicle that produced a strong odor.[4]

We are keenly aware that some of the items found in Provet's vehicle are commonplace and consistent with innocent travel. However, after reviewing the record to determine if the trial court's ultimate determination is supported by the evidence and analyzing the totality of the circumstances, we conclude there is evidence to support the trial court's ruling that reasonable suspicion existed in this case. *See United States v. Sokolow,* 490 U.S. 1, 9, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) ("Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion."); *see also United States v. Mason,* 628 F.3d 123 (4th Cir.2010) ("But just as one corner of a picture might not reveal the picture's subject or nature, each component that contributes to reasonable suspicion might not alone give rise to reasonable suspicion."); *United States v. Branch,* 537 F.3d 328, 336 (4th Cir.2008) ("[C]ontext matters: actions that may appear innocuous at a certain time or in a certain place may very well serve as a harbinger of criminal activity under different circumstances.").

Provet asserts the trial court's finding of reasonable suspicion would amount to a finding of reasonable suspicion of illegal activity for a majority of the vehicles on South Carolina's roadways. However, the combination of the commonplace items (i.e., numerous air fresheners, fast food bags, and several receipts) together with the surrounding circumstances (i.e., traveling two days without any luggage and inconsistent stories about where he was coming from and going to) eliminate a substantial portion of innocent travelers. *See Foreman,* 369 F.3d at 781 (4th Cir.2004) ("[A]rticulated factors

---

3. We recognize Owens' testimony was inconsistent as to the presence of luggage in Provet's vehicle. However, we find the trial court's conclusion that Provet was traveling without luggage was not prejudicial in light of Provet's own statement to Owens that he was traveling without any luggage. *See State v. King,* 367 S.C. 131, 136, 623 S.E.2d 865, 867 (Ct.App.2005) ("Error without prejudice does not warrant reversal.").

4. According to Owens, numerous air fresheners are used to disguise odors from law enforcement and drug detection canines.

together must serve to eliminate a substantial portion of innocent travelers before the requirement of reasonable suspicion will be satisfied.").

Furthermore, we conclude the trial court did not abuse its discretion in concluding reasonable suspicion existed based on the totality of the circumstances, particularly considering Owens' four years of experience as a member of the South Carolina Highway Patrol's Aggressive Criminal Enforcement Unit. *See United States v. Lender*, 985 F.2d 151, 154 (4th Cir.1993) ("Courts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street."); *see also Foreman*, 369 F.3d at 785 (holding reasonable suspicion existed to order dog sniff when (1) the defendant traveled from Norfolk, Virginia to New York City (a drug source city) and back (approximately seven hours each way) within a single day to visit his brother who was purportedly evicted; (2) the defendant was exceptionally nervous, which became more pronounced when a trooper raised the issue of drug trafficking; (3) the defendant had multiple air fresheners in his car, which are often used to disguise the odor of narcotics; and (4) the trooper had considerable experience with drug interdiction); *Mason*, 628 F.3d 123, (holding reasonable suspicion existed to order a dog sniff when (1) the defendant did not pull over promptly and the officer suspected that the defendant and the passenger were deliberating whether to comply or flee before pulling over; (2) the defendant's vehicle had an "extreme" odor of air fresheners beyond the officer's normal experience from the ordinary use of air fresheners; (3) the defendant had a single key on his key ring coupled with the fact that the defendant and the passenger were coming from a major drug source city, which could indicate their participation in a "turnaround" trip as drug couriers; (4) the defendant was sweating and unusually nervous, which became more pronounced as the traffic stop continued; and (5) the defendant and the passenger gave conflicting stories regarding their trip).

Therefore, we conclude the trial court did not err in finding reasonable suspicion existed to further detain Provet because there is evidence in the record to support the trial court's ruling.

## C. Voluntary Consent

Provet also argues he did not voluntarily consent to the search of the vehicle. We disagree.

Warrantless searches and seizures are reasonable within the meaning of the Fourth Amendment when conducted under the authority of voluntary consent. *Pichardo*, 367 S.C. at 105, 623 S.E.2d at 851. Undoubtedly, a law enforcement officer may request permission to search at any time. *Id.* The State bears the burden of establishing the voluntariness of the consent. *Id.* The voluntariness of a consent to search is a question of fact to be determined from the totality of the circumstances. *Id.* A trial court's conclusions on issues of fact regarding voluntariness will not be disturbed on appeal unless so manifestly erroneous as to be an abuse of discretion. *Pichardo*, 367 S.C. at 106, 623 S.E.2d at 851–52.

We conclude Provet's consent was voluntary based on the totality of the circumstances. During the suppression hearing, Owens testified he was not going to let Provet leave when he asked for Provet's consent to search Provet's vehicle. However, Owens did not convey this statement to Provet and stated Provet should have felt free to go because his driver's license and vehicle registration were returned and his traffic warning citation was issued. Moreover, Owens testified that he and Aman were the only officers at the scene at the time of the consent, Aman arrived in an unmarked police vehicle, and the drug detection canine was inside Aman's vehicle. Also, Owens indicated he did not make any promises in exchange for Provet's consent, no physical force was used, no guns were pointed, and no threatening tone was used in obtaining Provet's consent. Thus, we conclude based on the totality of the circumstances, the trial court did not err in concluding Provet voluntarily consented to the search of the vehicle. *See State v. Mattison*, 352 S.C. 577, 585, 575 S.E.2d 852, 856 (Ct.App.2003) (finding the presence of four police officers and a drug dog did not negate the defendant's consent to search his vehicle when there was no evidence of any overt actions, threats of force, or other forms of coercion).

508

**CONCLUSION**

Accordingly, the trial court's decision is
**AFFIRMED.**

HUFF and SHORT, JJ., concur.