747 S.E.2d 453

The STATE, Respondent,

v.

Karriem PROVET, Petitioner.

Appellate Case No. 2011–192746.

No. 27297.

Supreme Court of South Carolina.

Heard June 19, 2013.

Decided Aug. 14, 2013.

Tricia A. Blanchette of Law Office of Tricia A. Blanchette, LLC, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Deputy Attorney General Deborah R.J. Shupe and Solicitor William Walter Wilkins, III, all of Columbia, for Respondent.

Justice PLEICONES.

The Court granted certiorari to review a Court of Appeals opinion that affirmed the convictions and sentence of Karriem Provet (petitioner) for trafficking cocaine and resisting arrest. *State v. Provet*, 391 S.C. 494, 706 S.E.2d 513 (Ct.App.2011). On certiorari, petitioner argues the Court of Appeals erred when it affirmed the trial court's determination that reasonable suspicion existed to justify extension of a traffic stop and that petitioner voluntarily consented to the search of his vehicle. We affirm.

## FACTS

Corporal John Owens (Officer) is a 14–year veteran of the South Carolina Highway Patrol and 4–year veteran and supervisor of the upstate Aggressive Criminal Enforcement unit that targets drug trafficking and other serious crimes utilizing highway transportation. One evening in May 2002, while patrolling Interstate 85 in Greenville County, he stopped petitioner's vehicle for following another vehicle too closely and driving with a burned out tag light. He approached and asked petitioner for his driver's license and vehicle registration.

Officer testified that as petitioner produced those items, he observed that petitioner's hands were shaking excessively and his breathing was accelerated. Upon viewing the vehicle's

registration, Officer discovered that the vehicle was registered to a third party. He asked petitioner to step out of and to the rear of the vehicle. Officer performed a pat-down search which did not yield any weapons.

As Officer prepared a warning citation, he asked petitioner where he was coming from, and petitioner answered that he had been visiting his girlfriend at a nearby Holiday Inn. However, Officer had observed petitioner's vehicle approach and pass the exit at which the only Holiday Inn in Greenville was located. Officer asked petitioner at what exit the Holiday Inn was located, and petitioner could not say. Officer asked whether petitioner had gone to another location after leaving the Holiday Inn, and petitioner denied having done so. In response to Officer's questions, petitioner explained that the vehicle belonged to a different girlfriend than the one he had been visiting in Greenville; that he had recently graduated from a technical college and did not yet have a job; and that he had been in Greenville for two days but without bringing luggage. Officer also testified that he observed petitioner use delay tactics. Officer called for a canine drug detection unit. He then called dispatch to check on the status of petitioner's driver's license and the vehicle's registration.

Officer then approached petitioner's vehicle to check the vehicle identification number. While doing so, he observed several air fresheners and fast food bags, a cell phone, and some receipts, as well as a bag on the rear seat. The canine unit arrived before Officer received the dispatcher's return call regarding the status of petitioner's license and registration. When the dispatcher reported no problems with either of these items, Officer returned petitioner's license and registration and issued him a traffic warning citation.

Officer then asked for permission to search the vehicle, and petitioner assented. The officer handling the drug detection canine began preparing for the search. As he did so, petitioner fled the scene on foot but was apprehended. The drug detection canine alerted on the fast food bag, in which officers discovered a substance that field tested positive for and was later confirmed to be cocaine.

Petitioner moved to suppress the cocaine because it was obtained as a result of an illegal search. The trial court

denied the motion. It found that the purpose of the traffic stop was complete when Officer asked for permission to search the vehicle, so that two detentions existed for purposes of the Fourth Amendment. It found the second detention justified by Officer's reasonable suspicion that petitioner was involved in criminal activity and found that petitioner voluntarily consented to the search of the vehicle. The jury returned a guilty verdict on charges of drug trafficking and resisting arrest, and the trial court sentenced petitioner to twenty-five years' imprisonment. The Court of Appeals affirmed. This Court granted certiorari. We now affirm the Court of Appeals, and clarify that off-topic questioning by a law enforcement officer during the course of a traffic stop does not constitute a separate seizure for purposes of the Fourth Amendment, so long as the off-topic questioning does not measurably extend the duration of the stop.

## ISSUES

1. Did the Court of Appeals err when it affirmed the trial court's finding the officer had reasonable suspicion to seize petitioner after the conclusion of a lawful traffic stop?

2. Did the Court of Appeals err when it affirmed the trial court's finding that petitioner voluntarily consented to the search of his vehicle?

## ANALYSIS

I. Lawfulness of seizure

Petitioner contends the Court of Appeals erred when it affirmed the trial court's finding that the traffic stop was not unreasonably prolonged and that Officer had reasonable suspicion to further detain petitioner. We disagree.

 South Carolina appellate courts review Fourth Amendment determinations under a clear error standard. *See State v. Brockman,* 339 S.C. 57, 64–66, 528 S.E.2d 661, 664–66 (2000). We affirm if there is any evidence to support the trial court's ruling. *Id.* at 66, 528 S.E.2d at 666.

 The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. A police officer may "stop and briefly detain a person for investigative purposes" if he "has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot'...." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). The test whether reasonable suspicion exists is an objective assessment of the circumstances; the officer's subjective motivations are irrelevant. *See Ohio v. Robinette*, 519 U.S. 33, 38, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) ("[T]he fact that an officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.") (quoting *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (internal brackets, ellipsis, and quotation marks omitted)).

 Violation of motor vehicle codes provides an officer reasonable suspicion to initiate a traffic stop. *See Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). A traffic stop supported by reasonable suspicion of a traffic violation remains valid until the purpose of the traffic stop has been completed. *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009). The officer may not extend the duration of a traffic stop in order to question the motorist on unrelated matters unless he possesses reasonable suspicion that warrants an additional seizure of the motorist. *See United States v. Sullivan*, 138 F.3d 126, 131 (4th Cir.1998). The officer cannot avoid this rule by employing dilatory tactics. *See United States v. Jones*, 234 F.3d 234 (5th Cir.2000) (driver's Fourth Amendment rights violated when, after dispatcher reported no problems and officer had completed warning citation except for obtaining the driver's signature, officer deliberately delayed completing the stop for several more minutes until canine search unit arrived).

 Notwithstanding that an officer may not lawfully extend the duration of a traffic stop in order to engage in off-topic questioning, this rule does not limit the scope of the

officer's questions to the motorist during the traffic stop. As the United States Supreme Court has recently emphasized, "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Johnson*, 555 U.S. at 333, 129 S.Ct. 781; *see also Muehler v. Mena*, 544 U.S. 93, 101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005) ("As the Court of Appeals did not hold that the detention was prolonged by the questioning, there was no additional seizure within the meaning of the Fourth Amendment. Hence, the officers did not need reasonable suspicion to ask Mena [while detained as an occupant of a house being searched pursuant to a warrant] for her name, date and place of birth, or immigration status."); *United States v. Everett*, 601 F.3d 484, 490–91 (6th Cir.2010) (explaining that in *Muehler v. Mena* the Supreme Court resolved in the negative a circuit split on the question whether asking a motorist questions unrelated to the circumstances justifying the traffic stop violated the Fourth Amendment).

 The officer's observations while conducting the traffic stop may create reasonable suspicion to justify further search or seizure. *See Mimms*, 434 U.S. at 111–12, 98 S.Ct. 330 (finding "little question the officer was justified" in conducting pat-down search after officer asked motorist to exit vehicle and then observed bulge in motorists' jacket).

*a. Length of initial seizure*

 The trial court held that the initial seizure concluded when Officer issued petitioner the warning citation and returned his license and registration. It held that the initial stop was concluded in a reasonable length of time. The Court of Appeals affirmed, reasoning that Officer's off-topic questions "did not unreasonably extend the traffic stop." We agree with the trial court and the Court of Appeals that ten minutes was a reasonable length of time for the initial traffic stop and that Officer's off-topic questions did not measurably extend the duration of the stop. *See Johnson, supra.*

Petitioner argues that because Officer had already indicated he intended to issue a warning ticket before he began the off-

topic questioning, the questions exceeded the scope of the traffic stop and so the seizure became unlawful, citing *State v. Rivera*, 384 S.C. 356, 682 S.E.2d 307 (Ct.App.2009). In its opinion below, the Court of Appeals distinguished *Rivera* on its facts, pointing out that in *Rivera* the trunk was filled with luggage and there was no evidence of multiple air fresheners in the vehicle. It also noted that the *Rivera* court reviewed the trial court's suppression of the evidence under the deferential standard of review. We agree that *Rivera* is distinguishable from the present case on both bases.

We also note, however, that *Rivera* contains some statements that are misleading given the present state of Fourth Amendment law. The *Rivera* court reasoned that

> [The officer's] initial questioning, including where Respondents were coming from, how long they had been there, where they were going, and the purpose of their trip, was reasonable in that the questions tangentially related to the purpose of the traffic stop. Once [the officer] informed [the driver] he would receive a warning citation, however, the purpose of the stop ended and [the officer's] continued questioning concerning the transport of drugs on the interstate exceeded the scope of the stop. This amounted to a second and illegal detention unless [the officer] entertained a reasonable suspicion of illegal activity sufficient to warrant that detention.

*Id.* at 362, 682 S.E.2d at 310 (internal footnote omitted). This passage suggests that police questioning must have some relationship to the purpose of the stop in order to withstand Fourth Amendment scrutiny. To the extent it does, it is incorrect. *See Johnson, supra; Mena, supra.* In addition, the *Rivera* court identified the officer's statement that he would issue a warning citation to the driver as the point in time at which the purpose of the stop ended without citing dilatory tactics by the officer. To the extent *Rivera* suggests that shifting the conversation to another topic marks the end of the lawful seizure even though the citation has not been issued, regardless whether such off-topic conversation measurably extends the duration of the initial seizure, it is also incorrect. *See Jones, supra.*

 Although the rules implied by *Rivera* may have been reasonable extrapolations from earlier Fourth Amendment precedents,[1] they have now been clearly rejected by the United States Supreme Court. To the extent other South Carolina cases contain similar language, we note that language has likewise been superseded.

 We also note that the proper inquiry is not whether an officer "unreasonably" extended the duration of the traffic stop with his off-topic questions but whether he "measurably" extended it. *See Johnson, supra.* This is a temporal inquiry, not a reasonableness inquiry.

### b. *Reasonable suspicion*

 Petitioner also argues that the Court of Appeals erred when it affirmed the trial court's finding that Officer had reasonable suspicion to detain petitioner in order to request to search his vehicle after the purpose of the traffic stop had been completed. We disagree.

Officer testified to petitioner's extreme nervousness evidenced by shaking hands and accelerated breathing. He testified that, based on his experience with other motorists, petitioner's nervousness was excessive as compared with peo-

---

1. See, for example, *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) ("The predicate permitting seizures on suspicion short of probable cause is that law enforcement interests warrant a limited intrusion on the personal security of the suspect. The *scope* of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, *the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion* in a short period of time." (emphasis added)). The United States Supreme Court directly addressed the import of *Royer*'s reference to least intrusive means a few years later, in *United States v. Sokolow*, 490 U.S. 1, 11, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), explaining,

 That statement ... was directed at the length of the investigative stop, not at whether the police had a less intrusive means to verify their suspicions.... The reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques. Such a rule would unduly hamper the police's ability to make swift, on-the-spot decisions ... and it would require courts to indulge in unrealistic second-guessing.

ple pulled over who are not involved in criminal activities other than traffic-related infractions. He saw that petitioner's vehicle was registered to a third party, and petitioner's claims regarding his stay at the Greenville Holiday Inn and subsequent movements appeared to contradict Officer's direct observations. Petitioner also claimed to be unemployed yet appeared able to afford to stay at a hotel and buy large quantities of gas to drive a large vehicle. Officer also observed numerous air fresheners in the vehicle, which indicated to him a possibility that petitioner was seeking to mask odors from a police officer or canine drug detection unit. He also believed that the numerous fast food bags, receipts, and cell phone he observed in the vehicle were consistent with the tight schedule maintained by drug traffickers. Although on his second trip to the vehicle he observed a bag on the rear seat that could have been a luggage bag, petitioner had claimed he did not have luggage with him despite having stayed in Greenville for two days. Officer also testified he observed petitioner use delay tactics. Based on Officer's experience with drug trafficking interdiction, he suspected petitioner was involved in drug trafficking activity. We agree with the trial court and the Court of Appeals that Officer had a reasonable suspicion supported by articulable facts that criminal activity was afoot, justifying a second seizure. Moreover, because the record contains evidence that supports the trial court's finding, under our deferential standard of review we must affirm its finding.

Petitioner points out several factors that he contends were indicative of innocent travel: the address petitioner gave for his girlfriend was confirmed as a valid address; petitioner had no arrest record; and no negative information about the vehicle or petitioner was reported by the dispatcher. While we agree these facts could be found to weigh against Officer's reasonable suspicion, that determination was for the trial court, and we must affirm when any evidence in the record supports its finding. *Brockman, supra.*

Petitioner also argues that the Court of Appeals improperly distinguished *State v. Tindall*, 388 S.C. 518, 698 S.E.2d 203 (2010). We agree with the Court of Appeals' analysis in the opinion below that the totality of the circumstances in this

case provides more objective, articulable facts to justify Officer's suspicion than were present in *Tindall.*

Petitioner further argues the entire process was tainted by Officer's mental determination at an early point in the traffic stop not to let petitioner go, citing *United States v. Foster,* 634 F.3d 243, 249 (4th Cir.2011). *Foster* is inapposite, because in that case the court concluded that objective grounds for reasonable suspicion did not exist. Only after determining that the objective test was not met did the *Foster* court proceed to a discussion of the government's abusive practices, rebuking its "attempt[ ] to spin these largely mundane acts into a web of deception" and its "post hoc rationalizations to validate those seizures that happen to turn up contraband" as well as the officer's state of mind. *Id.* at 249. The *Foster* court's comment that "although the reasonable suspicion standard is an objective test, [the officer's] initial comments to [the arrestee], 'Knowing you, you are up to something,' clearly belie his stated reasons for initiating the stop[,]" *id.,* was not necessary to its decision and did not announce a new rule.

In any case, the proposition that the officer's subjective determinations could taint an objectively valid seizure has been expressly rejected by the United States Supreme Court. *Robinette, supra.*

II. Consent to search

■ Petitioner argues the Court of Appeals erred when it affirmed the trial court's finding that petitioner voluntarily consented to the search of his vehicle. We disagree.

■ We apply a deferential standard of review to the trial court's findings on issues of fact regarding the voluntariness of consent. *State v. Mattison,* 352 S.C. 577, 584–85, 575 S.E.2d 852 (2003).

■ A warrantless search is reasonable within the meaning of the Fourth Amendment when voluntary consent is given for the search. *Palacio v. State,* 333 S.C. 506, 514, 511 S.E.2d 62, 66 (1999). The existence of voluntary consent is determined from the totality of the circumstances. *Id.* When the defendant disputes the voluntariness of his consent, the burden is on the State to prove the consent was voluntary.

*Id.* "A consent to search procured during an unlawful stop is invalid unless such consent is both voluntary *and* not an exploitation of the unlawful stop." *State v. Robinson,* 306 S.C. 399, 402, 412 S.E.2d 411, 414 (1991) (emphasis in original).

In this case, the trial court determined that petitioner's consent was voluntary because Officer had returned his driver's license and vehicle registration and had issued the warning citation. It also found no show of force constrained petitioner, since only two officers were present, the drug detection canine was confined in the unmarked police vehicle, no guns were pointed, and no threatening tone was used. Considering the totality of the circumstances, we conclude the record supports the trial court's finding that petitioner voluntarily consented to the search.

Petitioner argues the Court of Appeals failed to recognize that the facts of *State v. Pichardo,* 367 S.C. 84, 623 S.E.2d 840 (Ct.App.2005), are analogous to those of this case and that *Pichardo* mandates a different result. We disagree. In *Pichardo,* the officer completed the purpose of the traffic stop, returning the driver's and passenger's paperwork, telling them to have a good day, and turning away, before turning around again and asking to speak with them further. 367 S.C. at 92–93, 623 S.E.2d at 845. The officer then explained that the interstate was being used for trafficking of contraband and weapons and asked for consent to search the vehicle. *Id.* at 93, 623 S.E.2d at 845. The trial court suppressed the evidence obtained during the search, finding that the officer's questioning of the two men constituted a seizure rather than a consensual encounter and no reasonable suspicion existed to warrant it. *Id.* at 103–104, 623 S.E.2d at 850–51.

*Pichardo* is inapposite because it deals with consent obtained during an unlawful rather than a lawful seizure. Thus, in *Pichardo* the State was required to make a higher showing: that the consent was both voluntary and not an exploitation of the unlawful seizure. *Robinson, supra.* In this case, the trial court found Officer had reasonable suspicion for an additional seizure, and a higher showing is not required. Moreover, in *Pichardo* the trial court found the consent not voluntary, while the trial court in this case found the consent to be voluntary.

The deferential standard of review therefore favors affirmance of opposing results.

Petitioner's reliance on *State v. Williams,* 351 S.C. 591, 571 S.E.2d 703 (Ct.App.2002), is misplaced for the same reasons. In that case the trial court found that the officer lacked probable cause for an additional seizure and that the subsequent consent was not voluntary. Thus, a higher showing was required in that case and the standard of review favored rather than disfavored the result desired by the defendant.

## CONCLUSION

The Court of Appeals correctly affirmed the trial court's findings that the traffic stop was not unlawfully extended, that Officer had reasonable suspicion for an additional seizure, and that petitioner's consent to search the vehicle was voluntary. However, we clarify that off-topic questioning does not constitute a separate seizure for Fourth Amendment purposes so long as it does not measurably extend the duration of a lawful traffic stop.

TOAL, C.J., KITTREDGE and HEARN, JJ., concur.

BEATTY, J., concurring in result only.