782 S.E.2d 124

**The STATE, Respondent,**

v.

**Cleophus N. EDWARDS, Jr., Appellant.**

Appellate Case No. 2012–213596.

No. 5377.

Court of Appeals of South Carolina.

Heard Sept. 8, 2015.

Decided Jan. 27, 2016.

402

Arthur Kerr Aiken, of Aiken & Hightower, and Chief Appellate Defender, Robert Michael Dudek, both of Columbia, for appellant.

Attorney General, Alan McCrory Wilson, Chief Deputy Attorney General, John W. McIntosh, Senior Assistant Deputy Attorney General, Donald J. Zelenka, and Assistant Attorney General, Caroline M. Scrantom, all of Columbia; and Solicitor David Michael Pascoe, Jr., of Orangeburg, for respondent.

McDONALD, J.

Cleophus N. Edwards, Jr. appeals his convictions for murder, first-degree burglary, and possession of a weapon during the commission of a violent crime, arguing the circuit court erred in admitting into evidence (1) a laptop computer, (2) clothing and shoes from a suitcase, and (3) the results of DNA analysis and shoe imprint comparisons. We affirm.

## FACTS/PROCEDURAL HISTORY

On February 3, 2011, Carolyn Hanton (the victim) was stabbed to death inside her house. Aaron Hanton, the victim's husband, reported a red Acer laptop was missing from the house. On February 16, 2011, when police went to Appellant Edwards's house to execute an arrest warrant for a probation violation, an officer observed Edwards using a red Acer laptop and matched its serial number to the serial number from the victim's computer box. Police questioned Edwards about the laptop following his arrest, and he confessed to stabbing and robbing the victim. A grand jury subsequently indicted him for murder, first-degree burglary, and possession of a weapon during the commission of a violent crime.

Before trial, Edwards moved to suppress evidence of the laptop, arguing police searched and seized it in violation of his Fourth Amendment rights. The State proffered the testimony of Officer Ryan Harter, who responded to the victim's house on February 3, 2011. Officer Harter testified that when the victim's family members informed him that a red Acer laptop was missing, he entered the serial number from the laptop's box into a police database and reported it as stolen.

Unrelated to the victim's murder, Officer Harter accompanied a team to Edwards's house on February 16, 2011, to

execute an arrest warrant for a probation violation. There, Officer Harter observed Edwards sitting with a red Acer laptop on his lap. Officer Harter testified that he was familiar with computers, and the model he viewed on Edwards's lap was "extremely consistent" with the missing laptop from the victim's house. Officer Harter stated, "Acer is not a real popular brand. And the fact that it is a red laptop really kind of sets it apart. We knew it was a widescreen laptop, and so it met a lot of criteria just from [being] able to view it." Officer Harter testified that he turned the computer over to view the serial number and discovered it matched the serial number of the missing computer. On cross-examination, Officer Harter reiterated that the brand, color, and screen width of the computer caught his attention. Officer Harter stated, "I believe[d] it had a high probability of being the computer we were seeking." Officer Harter acknowledged Edwards did not give him permission to move the computer to view the serial number and that police did not have any prior knowledge or tips that the computer would be located at Edwards's house.

Edwards argued that even though he was on probation, he had the right to be free from unreasonable searches in his home, and Officer Harter needed reasonable suspicion to search the computer. According to Edwards, the computer was "really an innocent object," and simply observing a computer of the same brand and color as the missing computer was insufficient to give Officer Harter reasonable suspicion.

Edwards also moved to suppress articles of clothing and shoes seized from a suitcase outside his house. The State explained that after his confession, police secured a warrant to search Edwards's house for weapons, clothing, and shoes. While police were executing the search warrant, Melvin Simmons and Britney Davis—Edwards's former roommate and his roommate's girlfriend—independently brought a suitcase purportedly belonging to Edwards to drop off at the house. According to the State, Officer Gerald Carter saw Edwards's name on the luggage tag, opened the suitcase at the scene, viewed a pair of tennis shoes, closed the suitcase, and took it into custody. The State explained that Officer William Ketcherside got a search warrant for the suitcase the next day, documented its contents, and transported the contents to the

South Carolina Law Enforcement Division (SLED) for testing. Edwards argued the suitcase evidence should be suppressed because it was not covered under the search warrant for the house and because exigent circumstances did not support the warrantless search of the suitcase. Edwards also asserted police lacked the necessary reasonable suspicion to search the suitcase because it was "an innocent object" that police had no reason to believe contained evidence of the crime.

The circuit court denied the motions to suppress the computer and suitcase evidence, determining that police needed only reasonable suspicion for the searches based on the probation statute [1] and Edwards's signing of a waiver acknowledging that as a condition of his probation, he was subject to warrantless searches based upon an officer's reasonable suspicions. The circuit court ruled that Officer Harter had reasonable suspicion to examine the computer, noting his experience and firsthand knowledge of the missing red Acer from his investigation of the victim's house thirteen days earlier. Additionally, the circuit court found that Officer Carter had reasonable suspicion to search the suitcase based on the discovery of the laptop at Edwards's house and his confession.

At trial, the circuit court admitted the laptop, suitcase clothing, and tennis shoes into evidence over Edwards's objection. SLED Agent Karl Kenley, qualified as an expert in footwear identification and comparison, opined that the tennis shoe from the suitcase had the same outsole designs as shoeprints found at the victim's house. SLED Agent Catherine Leisy, qualified as an expert in DNA analysis, opined that samples collected from the outside of the tennis shoe and from the bloodstained jeans from the suitcase matched the victim's DNA profile.

The jury convicted Edwards of murder, first-degree burglary, and possession of a weapon during the commission of a violent crime. The circuit court sentenced him to concurrent

---

1. *See* S.C.Code Ann. § 24–21–430 (Supp.2015) ("[Probation] conditions imposed [by a court] must include the requirement that the probationer must permit the search or seizure, without a search warrant, based on reasonable suspicions, of the probationer's person, any vehicle the probationer owns or is driving, and any of the probationer's possessions by . . . [a] law enforcement officer.").

sentences of life imprisonment for murder and first-degree burglary.

## STANDARD OF REVIEW

■ "A [circuit] court's Fourth Amendment suppression ruling must be affirmed if supported by any evidence, and an appellate court may reverse only when there is clear error." *State v. Taylor*, 401 S.C. 104, 108, 736 S.E.2d 663, 665 (2013).

## LAW/ANALYSIS

### I. Admissibility of the Red Laptop

Edwards argues the circuit court erred in admitting the laptop into evidence because police searched it without probable cause in violation of his Fourth Amendment rights. We disagree.

In *Arizona v. Hicks*, the United States Supreme Court held an officer's movement of stereo equipment to view its serial number constituted a search under the Fourth Amendment. 480 U.S. 321, 324–25, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). The Supreme Court explained that this action, which was unrelated to the objective of an authorized intrusion into the house, exposed concealed parts of the apartment to view and produced a new invasion of privacy that constituted a search. *Id.* at 325, 107 S.Ct. 1149. Analyzing the reasonableness of the search, the Supreme Court held that probable cause is generally required to conduct a search of an object in plain view, and the officer's reasonable suspicion that the equipment was stolen was not enough to support the movement and examination of the stereo equipment. *Id.* at 325–29, 107 S.Ct. 1149.

■■ Here, we agree that Officer Harter's movement of the laptop to view its serial number constituted a search under the Fourth Amendment. *See id.* at 324–25, 107 S.Ct. 1149 (holding an officer's movement of stereo equipment to view a serial number constituted a search under the Fourth Amendment). Because Officer Harter's action exceeded the scope of his lawful purpose of being at the apartment to execute an arrest warrant and exposed new information to view, we believe his examination of the laptop constituted a search.

*See id.* Next, we must analyze the reasonableness of the search.

Pursuant to the probation statute, a court may impose certain conditions upon probationers. S.C.Code Ann. § 24–21–430 (Supp.2015). "[T]he conditions imposed must include the requirement that the probationer must permit the search or seizure, without a search warrant, based on reasonable suspicions, of the probationer's person, any vehicle the probationer owns or is driving, and any of the probationer's possessions by . . . [a] law enforcement officer." *Id.*

In *United States v. Knights,* the United States Supreme Court held that a warrantless search of a probationer's house based on reasonable suspicion did not violate his Fourth Amendment rights. 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). The defendant signed a probation order containing a condition that he would "[s]ubmit his . . . person, property, place of residence, vehicle, personal effects, to search at anytime, with or without a search warrant, warrant of arrest or reasonable cause by any probation officer or law enforcement officer." *Id.* at 114, 122 S.Ct. 587 (alteration in original). While the defendant was on probation, a police officer searched his residence without a warrant based on suspicions that he was involved with an arson. *Id.* at 114–15, 122 S.Ct. 587. The Supreme Court analyzed the reasonableness of the search, balancing the defendant's expectation of privacy with the promotion of legitimate government interests. *Id.* at 118–21, 122 S.Ct. 587. The Supreme Court found, "[T]he search of [the defendant] was reasonable under [the] general Fourth Amendment approach of 'examining the totality of the circumstances,' with the probation search condition being a salient circumstance." *Id.* at 118, 122 S.Ct. 587 (internal citation omitted) (quoting *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)). Given the defendant's reduced expectation of privacy due to agreeing to the probation condition, the police officer's search, which was supported by reasonable suspicion, was permissible. *Id.* at 119–21, 122 S.Ct. 587. The Court explained that "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the proba-

tioner's significantly diminished privacy interests is reasonable." *Id.* at 121, 122 S.Ct. 587.

 "The term 'reasonable suspicion' requires a particularized and objective basis that would lead one to suspect another of criminal activity." *State v. Woodruff,* 344 S.C. 537, 546, 544 S.E.2d 290, 295 (Ct.App.2001). "In determining whether reasonable suspicion exists, the whole picture must be considered." *Id.* "Generally stated, reasonable suspicion is a standard that requires more than a 'hunch' but less than probable cause." *State v. Provet,* 391 S.C. 494, 500, 706 S.E.2d 513, 516 (Ct.App.2011). "[C]ourts must 'consider the totality of the circumstances' and 'give due weight to common sense judgments reached by officers in light of their experience and training.'" *Id.* at 500–01, 706 S.E.2d at 516 (quoting *United States v. Perkins,* 363 F.3d 317, 321 (4th Cir.2004)). "Reasonableness is measured in objective terms by examining the totality of the circumstances. As a result, the nature of the reasonableness inquiry is highly fact-specific." *Id.* at 501, 706 S.E.2d at 516 (quoting *State v. Tindall,* 388 S.C. 518, 527, 698 S.E.2d 203, 208 (2010)).

Although Edwards argues police lacked probable cause for the search under *Hicks,* we find Officer Harter needed only reasonable suspicion to support the search of the red laptop. This situation is distinguishable from that in *Hicks* because of Edwards's agreement to submit to searches of his possessions based on reasonable suspicion as a condition of his probation. Because of Edwards's reduced expectation of privacy as a probationer, reasonable suspicion was enough to support a search under the Fourth Amendment in these circumstances. *See Knights,* 534 U.S. at 121, 122 S.Ct. 587 ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable."). Therefore, the analysis hinges on whether Officer Harter had reasonable suspicion to search the laptop.

We find that evidence supports the circuit court's ruling that Officer Harter had reasonable suspicion under the totality of the circumstances. *See Taylor,* 401 S.C. at 108, 736 S.E.2d at 665 ("A [circuit] court's Fourth Amendment suppression

ruling must be affirmed if supported by any evidence, and an appellate court may reverse only when there is clear error."); *Provet*, 391 S.C. at 500, 706 S.E.2d at 516 ("In determining whether reasonable suspicion exists, the [circuit] court must consider the totality of the circumstances."). Officer Harter was aware of a stolen red widescreen Acer laptop because he documented the serial number from the computer box at the victim's house. Additionally, when entering Edwards's house, Officer Harter was aware that Edwards was on probation because police were executing an arrest warrant for a probation violation. When Officer Harter saw the laptop on Edwards's lap, he had reasonable suspicion to believe it was the victim's stolen laptop because of the distinctive nature of a red Acer widescreen laptop, his knowledge of computers, the short elapsed time of thirteen days since the murder, and the four-block proximity between Edwards's house and the victim's house. Accordingly, we hold the evidence supports the circuit court's ruling that police did not violate Edwards's Fourth Amendment rights because Edwards had a diminished expectation of privacy as a probationer and Officer Harter had reasonable suspicion to search the laptop under the totality of circumstances. Thus, the circuit court did not err in admitting the laptop into evidence. *See Taylor*, 401 S.C. at 108, 736 S.E.2d at 665 ("A [circuit] court's Fourth Amendment suppression ruling must be affirmed if supported by any evidence, and an appellate court may reverse only when there is clear error.").

## II. Admissibility of the Suitcase Evidence

Edwards next argues the circuit court erred in admitting into evidence the clothing and shoes because police lacked reasonable suspicion to search his suitcase. Edwards further asserts the circuit court erred in admitting into evidence the results of DNA analysis and shoe imprint comparisons because this evidence should have been excluded under the "fruit of the poisonous tree" doctrine as it stemmed from the illegal search of the suitcase. We disagree.

First, we find the circuit court did not err in admitting the items from the suitcase into evidence. As explained above, because of Edwards's probation condition, officers needed only reasonable suspicion to search his posses-

sions. *See* S.C.Code Ann. § 24–21–430 (Supp.2015); *Knights,* 534 U.S. at 121, 122 S.Ct. 587. Because Davis informed Officer Carter that the suitcase belonged to Edwards and the suitcase had a luggage tag with Edwards's name, we believe Officer Carter reasonably believed it belonged to Edwards. Further, when Officer Carter opened the suitcase, Edwards had already confessed to stabbing and robbing the victim, and police were searching for the shoes Edwards wore during the incident to compare with shoe prints at the scene. Police had a warrant to search Edwards's house for the shoes, clothing, weapons, or other evidence from the incident. Although Officer Carter did not have a particular lead that evidence would be contained in the suitcase, he had a particularized and objective basis for searching the suitcase because Edwards had confessed and police were looking for the shoes and clothing worn during the incident. Therefore, we find Officer Carter had, under the totality of the circumstances, reasonable suspicion that evidence of the crimes Edwards had already confessed to would be located in his suitcase, a logical place to store shoes and clothing or potentially to hide evidence. *See Provet,* 391 S.C. at 500, 706 S.E.2d at 516 ("In determining whether reasonable suspicion exists, the [circuit] court must consider the totality of the circumstances.").

Second, because the search of the suitcase was valid under the Fourth Amendment, the DNA analysis of the suitcase evidence and the shoe imprint comparison testimony did not derive from an illegal search. Therefore, we find the circuit court properly declined to exclude it as "fruit of the poisonous tree." *See State v. Copeland,* 321 S.C. 318, 323, 468 S.E.2d 620, 624 (1996) (providing evidence generally must be excluded as "fruit of the poisonous tree" if it would not have come to light but for illegal police action).

## CONCLUSION

We conclude the circuit court properly denied the motions to suppress and properly admitted the challenged evidence. Accordingly, the circuit court's decision is

**AFFIRMED.**

SHORT and GEATHERS, JJ., concur.