659 S.E.2d 272

**The STATE, Respondent,**

v.

**Blair ADAMS, Appellant.**

**No. 4362.**

Court of Appeals of South Carolina.

Heard Feb. 5, 2008.

Decided March 20, 2008.

John G. Reckenbeil, of Spartanburg, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.

HEARN, C.J.:

Blair Adams appeals the circuit court's failure to grant his motion to suppress evidence. Adams maintains the purpose of the initial traffic stop had been fulfilled, and police had no reasonable suspicion, probable cause, or Adams' consent to continue the stop. We affirm.

## FACTS

Police Officer Bradford James pulled Adams over during the officer's patrol of the Park Hills area of Spartanburg. James noticed Adams' vehicle make a left turn without first signaling, and thereafter James pulled the vehicle over. James approached the vehicle and asked Adams to produce his driver's license, vehicle registration, and proof of insurance. James testified Adams was visibly nervous and unsure during the encounter, and stuttered slightly when answering his questions. James also noticed the vehicle had numerous air fresheners hanging from his rearview mirror, and there was a box filled with plastic bags in the passenger-side floorboard.[1]

Because of the nervousness displayed by Adams, as well as the potential existence of narcotics, and the safety concerns of James standing partially in the roadway, James asked Adams to exit and accompany him to the rear of the vehicle while he conducted the registration check. This check revealed Adams was not the registered owner of the vehicle, and that Adams' driving license had previously been suspended as a result of a

---

1. Testimony from a second police officer to arrive on the scene, William Reese, explained that multiple air fresheners in one vehicle is "a very good indicator" of the presence of narcotics because of the fresheners' ability to mask the odor of drugs.

drug conviction. During this police dispatch check, a second officer, William Reese came on the scene.

While in the presence of Reese, James asked Adams for permission to search his vehicle. Conflicting testimony exists as to whether Adams granted James permission to search his vehicle. James testified Adams initially did not understand his rights, and that he asked James whether he could say no to the request. Reese testified he arrived during this conversation and told Adams "you do not have to give consent if you don't want to." Thereafter, both James and Reese testified Adams gave consent to search the vehicle. Adams meanwhile, testifying only to the issue of consent, maintained he never granted the officers permission to search his vehicle, and after he attempted to leave, the officers searched his vehicle without his consent to do so.

According to both officers, Reese remained with Adams at the rear of the vehicle while James conducted the search. An initial inspection revealed a quantity of white powder in the center console. James field-tested the powder, revealing a positive indication for cocaine. Adams was then placed under arrest. A subsequent search incident to the arrest revealed an additional 11.75 grams of powder that field-testing indicated was cocaine, as well as a set of digital scales.

A grand jury indicted Adams for trafficking in cocaine. During the ensuing bench trial, Adams made a motion to suppress the evidence found in Adams' vehicle as a product of an illegal search, which was denied. Subsequently, a bench trial was held, and the circuit court found Adams guilty of trafficking cocaine, and sentenced him to twenty-five years imprisonment. This appeal followed.

## STANDARD OF REVIEW

The admission of evidence is within the discretion of the circuit court and will not be reversed absent an abuse of discretion. *State v. Gaster*, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002). An abuse of discretion occurs when the conclusions of the circuit court either lack evidentiary support or are controlled by an error of law. *State v. McDonald*, 343 S.C. 319, 325, 540 S.E.2d 464, 467 (2000).

In criminal cases, an appellate court only reviews errors of law. *State v. Butler,* 353 S.C. 383, 388, 577 S.E.2d 498, 500 (Ct.App.2003) (citing *State v. Wilson,* 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001)). We are bound by the circuit court's factual findings unless we find that they are clearly erroneous. This standard of review also applies to preliminary factual findings in determining the admissibility of certain evidence in criminal cases. *Id.* We are limited in our review of Fourth Amendment search and seizure cases to determining whether there is any evidence to support the circuit court's finding. *State v. Bowman,* 366 S.C. 485, 501, 623 S.E.2d 378, 386 (2005). An appellate court will reverse only when clear error exists. *Id.*

## LAW/ANALYSIS

Adams maintains the purpose of the initial traffic stop had been fulfilled, and police had no reasonable suspicion, probable cause, or Adams' consent to continue the stop. We disagree.

■ Initially, we note Adams does not appeal the circuit court's order finding James had probable cause to initiate a traffic stop based on his observation of Adams making a turn without an appropriate turn signal. Where probable cause exists to believe that a traffic violation has occurred, the decision to stop the automobile is reasonable per se. *Whren v. United States,* 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). When a vehicle has been lawfully detained for a traffic violation, a police officer may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures. *Pennsylvania v. Mimms,* 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). In carrying out the stop, an officer " 'may request a driver's license and vehicle registration, run a computer check, and issue a citation.' " *United States v. Sullivan,* 138 F.3d 126, 131 (4th Cir.1998) (citation omitted). However, "[a]ny further detention for questioning is beyond the scope of the [ ] stop and therefore illegal unless the officer has a reasonable suspicion of a serious crime." *Id.*

■ Our inquiry then requires an analysis of whether James detained or seized Adams anew, thereby triggering the Fourth Amendment and potentially rendering any subsequent

consent to a search of his vehicle invalid, or if the encounter turned into a consensual one invoking no constitutional scrutiny. *See State v. Williams,* 351 S.C. 591, 599, 571 S.E.2d 703, 707–08 (Ct.App.2002). James testified the entire encounter from the initial detention to the arrest of Adams took no longer than ten minutes. Additionally, James testified he requested Adams' consent to search his vehicle within thirty seconds of receiving the return call on the vehicle registration check. This request was made before James had returned to his cruiser to fill out the necessary paperwork to issue Adams a citation. As stated above, Reese arrived on the scene at approximately the same time, and both officers testified Adams' consent to search the vehicle was given a short time later. Therefore, we find Adams' disputed consent was given within the initial parameters of the lawful detention.

"Warrantless searches and seizures are reasonable within the meaning of the Fourth Amendment when conducted under the authority of voluntary consent." *Palacio v. State,* 333 S.C. 506, 514, 511 S.E.2d 62, 66 (1999). "Undoubtedly, a law enforcement officer may request permission to search at any time. However, when an officer asks for consent to search after an unconstitutional detention, the consent procured is per se invalid unless it is both voluntary and not an exploitation of the unlawful detention." *State v. Pichardo,* 367 S.C. 84, 105, 623 S.E.2d 840, 851 (Ct.App.2005). Whether consent to a search is voluntary is a question of fact to be determined from the totality of the circumstances. *State v. McKnight,* 352 S.C. 635, 656, 576 S.E.2d 168, 179 (2003). *See also State v. Brockman,* 339 S.C. 57, 66, 528 S.E.2d 661, 665–66 (2000) (applying a "clearly erroneous" standard of review in determining whether trial judge properly held defendant consented to search).

In the case before us, both James and Reese testified that permission to search the vehicle was sought within five minutes of the initial detention. Furthermore, Reese testified that when Adams inquired as to whether he could refuse the search request, Reese advised him he did not have to consent. According to the testimony, Adams consented to the search immediately thereafter. Based on the totality of the circumstances, the circuit court did not abuse its discretion in finding

Adams gave his consent to search his vehicle, and that the consent was voluntary in nature.

Accordingly, the decision of the circuit court is

**AFFIRMED.**

PIEPER, J., and CURETON, A.J., concur.