698 S.E.2d 203

**The STATE, Respondent,**

v.

**Terry T. TINDALL, Petitioner.**

**No. 26861.**

Supreme Court of South Carolina.

Heard Nov. 4, 2009.

Decided Aug. 16, 2010.

John S. Nichols, of Bluestein, Nichols, Thompson & Delgado, LLC, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Christina Theos Adams, of Anderson, for Respondent.

Justice PLEICONES.

Terry T. Tindall was convicted of trafficking cocaine in excess of four hundred grams, sentenced to twenty-five years imprisonment, and assessed a $250,000 fine. On certiorari, he challenges the Court of Appeals rulings affirming the trial court's denial of his motions to suppress the cocaine and his statement to police. *State v. Tindall,* 379 S.C. 304, 665 S.E.2d 188 (Ct.App.2008). We reverse.

## FACTS

One morning in 2004, an officer stopped Tindall's vehicle for speeding, following another vehicle too closely, and failure to maintain his lane. The officer asked Tindall to exit the vehicle and to have a seat in the patrol car. The officer questioned Tindall and, approximately fifteen to twenty minutes into the stop, asked Tindall if he could search his car, to which he replied "I don't care" or "I don't mind." The officer searched

the vehicle and discovered a large quantity of cocaine hidden beneath the rear bumper.[1]

Tindall was placed in custody and given *Miranda* warnings, after which he gave a statement to the officer admitting that he was being paid $1,500 to drive the Jeep from Atlanta to Durham. Tindall never admitted knowing that the cocaine was in the vehicle. At trial, Tindall moved to suppress the cocaine and his statement to police. The trial court denied the motions and Tindall was convicted and sentenced. The Court of Appeals affirmed on direct appeal. This Court granted certiorari to review the decision of the Court of Appeals.

## DISCUSSION

On appeals from a motion to suppress based on Fourth Amendment grounds, this Court applies a deferential standard of review and will reverse if there is clear error. *See State v. Khingratsaiphon,* 352 S.C. 62, 70, 572 S.E.2d 456, 459 (2002). However, this deference does not bar this Court from conducting its own review of the record to determine whether the trial judge's decision is supported by the evidence. *Id.*

The Fourth Amendment to the Constitution of the United States grants citizens the right to be secure against unreasonable search and seizure. U.S. Const. amend. IV. Temporary detention of an individual in the course of a routine traffic stop constitutes a Fourth Amendment seizure, but where probable cause exists to believe that a traffic violation has occurred, such a seizure is reasonable per se. *See Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). In carrying out a routine traffic stop, a law enforcement officer may request a driver's license and vehicle registration, run a computer check, and issue a citation. *See United States v. Sullivan,* 138 F.3d 126, 131 (4th Cir.1998). Any further detention for questioning is beyond the scope of the stop and therefore illegal unless the officer has reasonable suspicion of a serious crime. *Id.*

Tindall concedes that the initial traffic stop was legal but contends that the officer exceeded the scope of the stop

---

1. The entire encounter was captured on the officer's dash camera and there is no genuine dispute as to the facts, only their interpretation.

without reasonable suspicion that a serious crime was afoot. We agree.[2]

The officer stopped Tindall for speeding, following too closely behind another vehicle, and failing to maintain his lane. He obtained Tindall's driver's license, registration, proof of insurance, and a copy of the car rental agreement and asked him to have a seat in the front passenger seat of his patrol car. The officer testified that as Tindall exited the vehicle, he did a "felony stretch," raising his hands in a stress relief action which officers are taught to look for in criminal patrol classes. He then patted-down Tindall and Tindall took a seat in the patrol car. A police dog was in the back of the vehicle.

The officer asked Tindall about his destination and he responded that he was driving to Durham to meet with his brother. The officer then called in the driver's license and vehicle information. Approximately three minutes later, the dispatcher reported back that there were no problems with either the license or vehicle and the officer informed Tindall that he would write him a warning ticket.

At this point, the purpose of the traffic stop was accomplished except for the issuance of the warning ticket. However, rather than issue the ticket, the officer continued to question Tindall for an additional six to seven minutes, inquiring as to where he was going, the purpose for the trip, what exit he would take to get to Durham, whether he had ever been charged with any drug crimes, what type of business he was in, and various questions about his business.[3] During this questioning, two other officers called in for back-up stood outside of the patrol car door.

We find the officer's continued detention of Tindall exceeded the scope of the traffic stop and constituted a seizure for purposes of the Fourth Amendment. A reasonable person in Tindall's position—seated in the front seat of the patrol car

---

2. We find, as did the Court of Appeals, that Tindall's arguments are properly preserved for review.

3. Tindall stated that he had recently been laid off by Northwest Airlines and that he and his wife were opening a day care center. The officer then asked Tindall questions about day care regulations, including the ratio of staff to children and the amount of square footage provided per child.

with two officers standing at his door, another officer to his left, and a police dog in the back seat—would not have felt free to terminate the encounter. *See Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991) (seizure for purposes of Fourth Amendment where reasonable person would not feel free to disregard the police and go about his business).

█ The question therefore becomes whether the officer reasonably suspected a serious crime at the point at which he chose not to conclude the traffic stop, despite his stated intention to issue a warning ticket, instead opting to continue his questioning. *See Sullivan*, 138 F.3d at 131. At that point, the officer had ascertained the following information: (1) Tindall was driving to Durham[4] to meet his brother; (2) Tindall was driving a rental car rented the previous day by another individual which was to be returned to Atlanta on the day of the stop; (3) Tindall did a "felony stretch" on exiting the vehicle; and (4) Tindall seemed nervous. We find these facts did not provide the officer with a "reasonable suspicion" that a serious crime was afoot. Consequently, the continued detention was illegal and the drugs discovered during the search of the vehicle must be suppressed.[5]

█ The fact that Tindall "consented" to the search of the vehicle does not alter our conclusion as the consent was the product of the unlawful detention. "Undoubtedly, a law enforcement officer may request permission to search at any time. However, when an officer asks for consent to search

---

4. The officer testified that Durham is a "drug hub." He also stated that Greenville, Charlotte, Jacksonville, Raleigh, Spartanburg, and Oconee are "drug hubs."

5. We disagree with the dissent's contention that we fail to appropriately apply the standard of review. While we acknowledge that we review under the deferential "any evidence" standard, this Court still must review the record to determine if the trial judge's ultimate determination is supported by the evidence. *See Khingratsaiphon*, 352 S.C. at 70, 572 S.E.2d at 459. In short, we must ask first, whether the record supports the trial court's assumed findings, set forth above, and second, whether these facts support a finding that that the officer had reasonable suspicion of a serious crime to justify continued detention of Tindall. On the facts before us, we must answer the latter question in the negative.

after an unconstitutional detention, the consent procured is per se invalid unless it is both voluntary and not an exploitation of the unlawful detention." *State v. Adams,* 377 S.C. 334, 339, 659 S.E.2d 272, 275 (Ct.App.2008), citing *State v. Pichardo,* 367 S.C. 84, 105, 623 S.E.2d 840, 851 (Ct.App.2005). Having found the seizure violated the Constitution, we find nothing in the record to rebut this presumption of invalidity.

As we find that the cocaine was discovered after an unlawful detention and invalid consent, we conclude that Tindall's statement should have been suppressed. *See State v. Copeland,* 321 S.C. 318, 323, 468 S.E.2d 620 (1996) ("The 'fruit of the poisonous tree' doctrine provides that evidence must be excluded if it would not have come to light but for the illegal actions of the police, and the evidence has been obtained by the exploitation of that illegality.").

## CONCLUSION

We find the officer's actions after completion of the license and registration computer check exceeded the scope of the initial traffic stop. The continued stop beyond this point, without reasonable suspicion, constituted an illegal detention and the evidence and statement should have been suppressed. The decision of the Court of Appeals, which upheld the trial court's denial of Tindall's motions to suppress, is therefore

REVERSED.

BEATTY, J., and Acting Justice JOHN H. WALLER, Jr., concur.

KITTREDGE, J., dissenting in a separate opinion, in which Acting Justice JAMES E. MOORE, concurs.

Justice KITTREDGE.

I respectfully dissent. Two guiding principles shape our State's Fourth Amendment jurisprudence. First, in a Fourth Amendment fact-based challenge, we are constrained by the "any evidence" standard of review. A trial court's ruling in Fourth Amendment search and seizure cases must be upheld if there is any evidence to support the ruling. *State v. Brockman,* 339 S.C. 57, 66, 528 S.E.2d 661, 666 (2000) ("[W]e

will review the trial court's ruling like any other factual finding and reverse if there is clear error. We will affirm if there is any evidence to support the ruling."). Second, the touchstone of the Fourth Amendment is "reasonableness." *Michigan v. Fisher*, —— U.S. ——, 130 S.Ct. 546, 548, 175 L.Ed.2d 410 (2009) (" '[T]he ultimate touchstone of the Fourth Amendment,' we have often said, is 'reasonableness.' ") (quoting *Brigham City, Utah v. Stuart,* 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006)). Today's decision ignores these principles. The Court simply substitutes its preferred findings and construes the Fourth Amendment in a manner that places unnecessary and unreasonable constraints on law enforcement.

## I.

Terry T. Tindall was paid $1,500 to transport a large quantity of cocaine from Atlanta, Georgia, to Durham, North Carolina. Tindall was apprehended in Oconee County, South Carolina. He was convicted and sentenced for trafficking cocaine in excess of 400 grams. The trial court denied Tindall's motions to suppress the drugs and his statement to police. The court of appeals properly applied the "any evidence" standard of review and affirmed. *State v. Tindall,* 379 S.C. 304, 309, 665 S.E.2d 188, 191 (Ct.App.2008) (recognizing that a trial court's factual rulings are reviewed under the "clear error" standard and the appellate court will affirm if any evidence supports the ruling) (citing *Brockman,* 339 S.C. at 66, 528 S.E.2d at 666).

## II.

Sergeant Dale Colegrove of the Oconee County Sheriff's Office was patrolling Interstate 85 the morning of April 15, 2004. At 7:05 a.m., Colegrove conducted a traffic stop on a Jeep Cherokee traveling northbound on the interstate after the vehicle crossed from Georgia into South Carolina, near mile-marker three. The vehicle was speeding and following another vehicle too closely. The vehicle was driven by Tindall.

As a result of Tindall's nervousness and delay in following initial instructions, Colegrove, an experienced officer, "sense[d] that something wasn't right with what [Tindall] was

thinking." Colegrove's suspicions grew when he learned Tindall was driving a rental car from Atlanta. The car had been rented by another individual, Lee Braggs, the day before and had to be returned to Atlanta that day, April 15. Tindall was named as a permissive user in the rental agreement.

Colegrove promptly began the process of checking Tindall's driver's license and vehicle registration, while engaging Tindall in conversation. According to Colegrove, "while waiting on the check to come back, I really started just observing behavior changes." Colegrove requested backup. When Colegrove received information from dispatch that Tindall's driver's license was valid at approximately 7:15 a.m., he informed Tindall that he would receive a warning ticket.

Colegrove began to write the warning ticket while continuing to talk with Tindall. When the warning ticket was completed at 7:20 a.m. and the ticket was issued to Tindall, Colegrove asked for, and received, Tindall's consent to search the vehicle. Fifteen minutes elapsed from the initial stop to the issuance of the ticket to the search of the vehicle. At 7:29 a.m., 2,380 grams of cocaine were found hidden in three packages in the rear undercarriage of the vehicle.

Tindall was placed in custody and given *Miranda* warnings at 7:34 a.m., after which he gave a statement to Colegrove. Sergeant Colegrove testified:

[Tindall] stated that he was traveling to Durham, leaving Atlanta going to Durham for Lee Braggs. He stated again that he was being paid $1,500—once his *Miranda* and everything else was read, he stated to me he was being paid $1,500 to take that Jeep from Atlanta to Durham where Mr. Braggs was flying to meet him in Durham to pick that vehicle up and that his brother was going to return him back to Atlanta and that he was getting $1,500 for driving that vehicle from Atlanta to Durham. That's exactly what he said.

Tindall was indicted for trafficking cocaine in excess of 400 grams. He moved to suppress the cocaine and his statement to police. The trial court denied the motions, and Tindall was convicted and sentenced. The court of appeals applied the proper standard of review and affirmed in a thorough and well-reasoned opinion.

## III.

There is evidence to support a finding that the officer had objectively reasonable and articulable suspicion that Tindall was engaged in criminal activity. This is the basis of the court of appeals' affirmation. Viewing the "whole picture," I join the court of appeals and would hold the standard of review requires an affirmance. More to the point, I cannot say that under the totality of the circumstances there is no evidence to support the ruling of the trial court.

In addition, contrary to the majority's implication, the Constitution does not foreclose further conversation between a motorist and law enforcement during the process of writing a traffic summons. *See Muehler v. Mena,* 544 U.S. 93, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005) (holding mere police questioning while individual was detained did not constitute an independent Fourth Amendment violation and such questioning was not additional seizure within the meaning of the Fourth Amendment). There is ample evidence to affirm the denial of Tindall's Fourth Amendment challenge, as the court of appeals recognized.

The Fourth Amendment is measured through a lens of reasonableness. *See Fisher,* 130 S.Ct. at 548; *Brigham City, Utah,* 547 U.S. at 403, 126 S.Ct. 1943. Fourth Amendment challenges are typically fact-intensive. As observed in *State v. Pichardo,* "[r]easonableness is measured in objective terms by examining the totality of the circumstances. As a result, the nature of the reasonableness inquiry is highly fact-specific." 367 S.C. 84, 101, 623 S.E.2d 840, 849 (Ct.App.2005) (citations omitted). The fact-specific nature of the inquiry explains why this Court determined the deferential "any evidence" standard of review is appropriate in Fourth Amendment cases in *Brockman.*

The court of appeals cited to what, prior to today, was a sound rule—"Under the 'clear error' standard, an appellate court will not reverse a trial court's finding of fact simply because it would have decided the case differently." *Tindall,* 379 S.C. at 309, 665 S.E.2d at 191 (citing *Pichardo,* 367 S.C. at 95–96, 623 S.E.2d at 846). I vote to affirm the court of appeals.

Acting Justice JAMES E. MOORE, concurs.