# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Rushan Counts, Petitioner.

Appellate Case No. 2013-000086

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Richland County
Alison Renee Lee, Circuit Court Judge

---

Opinion No. 27546
Heard September 25, 2014 – Filed July 8, 2015

---

## AFFIRMED AS MODIFIED

---

Dayne C. Phillips, of Lexington, and Carmen Vaughn
Ganjehsani, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Assistant
Attorney General Mark Reynolds Farthing and Assistant
Attorney General Julie Kate Keeney, all of Columbia, for
Respondent.

---

**JUSTICE BEATTY:** Rushan Counts was convicted of possession with intent to distribute marijuana, third offense. On appeal, Counts contended the circuit court judge erred in denying his motion to suppress evidence that was found

at his residence after he opened his door in response to police officers knocking on the door.  Counts claimed the use of the "knock and talk" investigative technique at his home violated his rights under the constitutions of the United States[1] and South Carolina[2] as this procedure constituted an unreasonable search and seizure and violated his state right to privacy.  The Court of Appeals summarily affirmed Counts' conviction and sentence.  *State v. Counts*, Op. No. 2012-UP-585 (S.C. Ct. App. filed Oct. 31, 2012).  This Court granted Counts' petition for a writ of certiorari to review the decision of the Court of Appeals.  We affirm as modified.

## I.      Factual / Procedural History

Prior to trial, Counts moved to suppress the drugs and weapon recovered from his home on the ground that law enforcement's search of his home violated the Fourth Amendment of the United States Constitution and Article I, section 10 of the South Carolina Constitution.  In his written motion, Counts claimed the search was unconstitutional because law enforcement did not have a warrant or probable cause.  Counts maintained that, prior to searching his home, the officers failed to corroborate the anonymous tip that precipitated the actions of law

---

[1]  The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, *houses*, papers, and effects, against *unreasonable searches and seizures*, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV (emphasis added).

[2]  Article I, section 10 of the South Carolina Constitution provides:

> The right of the people to be secure in their persons, *houses*, papers, and effects against *unreasonable searches and seizures and unreasonable invasions of privacy* shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, the person or thing to be seized, and the information to be obtained.

S.C. Const. art. I, § 10 (emphasis added).

enforcement.  Additionally, Counts asserted the plain view doctrine did not apply as law enforcement's initial intrusion into his home was not lawful.

During the pre-trial suppression hearing, Investigator Damon Robinson of the Richland County Sheriff's Department testified that in June 2007 he received an anonymous tip alleging Counts was selling marijuana and crack cocaine out of his mother's house and an apartment in Allen Benedict Court in Columbia.  The anonymous tipster provided Counts' name and aliases, the location of Counts' alleged drug deals, Counts' girlfriend's name, a vehicle license plate number for a white Chevy Malibu, the make and model of the car used by Counts' girlfriend, and Counts' phone number.  Based on this information, Richland County deputies conducted surveillance on the home of Counts' mother and attempted two controlled drug buys from the apartment in Allen Benedict Court.  The controlled buys were unsuccessful.

On April 2, 2008, Lieutenant Dave Navarro of the Richland County Sheriff's Department received a complaint from an anonymous tipster claiming Counts was selling drugs out of his residence.  Lieutenant Navarro testified that the tipster provided Counts' name and phone number, the name and phone number of Counts' girlfriend, and identified Counts' vehicle.  The tipster also informed Lieutenant Navarro that Counts used multiple identities because Counts knew someone at the Department of Motor Vehicles through whom he procured at least two false forms of identification.  The tipster further stated Counts was selling drugs at a specific address and at his girlfriend's apartment in Allen Benedict Court.  The tipster also claimed Counts' father was aware of the drug dealing and would cover for him. The tipster warned Lieutenant Navarro that Counts carried guns everywhere he went.

Lieutenant Navarro discussed this information with Investigator Robinson, who confirmed there were two similar tips about Counts.  Lieutenant Navarro then attempted to corroborate the information provided to him from the tipster by reviewing Counts' "rap sheet," which revealed two prior charges of distribution and several other drug charges.  He also confirmed that Counts had two identification cards on record.  Based on this information, Lieutenant Navarro and other members of the Richland County Drug Suppression Team conducted surveillance of Counts' residence.  Once they identified Counts driving into and entering the residence, Lieutenant Navarro decided to conduct a "knock and talk."  According to Lieutenant Navarro, a "knock and talk" is a common investigative technique used by the sheriff's department during which officers approach a residence and explain an allegation to someone who has been accused of wrongdoing.

Lieutenant Navarro, who was accompanied by Deputy Brian Elliott, knocked on Counts' door. When Counts asked the officers to identify themselves, Deputy Elliott responded that they were with the Richland County Sheriff's Department. Upon Counts' request, Deputy Elliott displayed his badge through the peephole in the door. Counts then opened the door. Both officers testified they immediately smelled "the strong odor of marijuana." Deputy Elliott testified that from outside the doorway he saw a "rolled blunt" on the coffee table in the living room. Deputy Elliott immediately said, "600," indicating to Lieutenant Navarro that drugs were present. Both officers described Counts' posture as "bladed," which suggested that Counts had a gun. Lieutenant Navarro then observed a silver automatic gun in Counts' hand, to which he responded "59, 59," meaning Counts was armed. Once the officers drew their guns and approached Counts, Counts dropped his gun and was immediately detained by the officers.

Both officers testified they performed a protective sweep of the residence during which they discovered in plain view a bag of marijuana and a scale in the kitchen. A search of Counts' person revealed another bag of marijuana. Once the house was cleared, the officers contacted Investigator Robinson, who obtained a search warrant for Counts' residence the same afternoon. The search revealed approximately 800 grams of marijuana, $3,637 in cash, two cell phones, a digital scale, two false identification cards with Counts' picture, and three pieces of mail addressed to Counts.

After hearing arguments, the trial judge denied the motion to suppress. In prefacing her ruling, the judge made the following findings of fact: (1) on April 2, 2008 the officers received an anonymous tip, which indicated that Counts was selling narcotics and identified Counts' name, vehicle, phone number, and his girlfriend's name; (2) the sheriff department's investigation revealed that Counts drove multiple vehicles, was known to carry weapons, and used multiple aliases; (3) during the course of surveillance of Counts' residence, the officers did not witness Counts engaging in activity to suggest that he was selling drugs; (4) after the officers observed Counts enter the residence, they approached, knocked on the door, and identified themselves as law enforcement officers; (5) when Counts opened the door both officers detected a "strong odor of marijuana emanating from inside" the residence; (6) the officers described Counts as standing at the door with his "body bladed" in an attempt to conceal a weapon; and (7) the officers observed Counts with a gun and, in turn, drew their guns and ordered Counts to drop the gun. The judge, however, questioned whether the officers saw the "blunt" on the living room table before they entered the residence as the written incident report

indicated that Deputy Elliott did not see the "blunt" until after Counts was detained.

Although the trial judge found the officers did not have probable cause at the time they went to Counts' residence to either arrest Counts or search his residence, the judge ruled that law enforcement did not "need a warrant to do what any private citizen may legitimately do, approach a home to speak to the inhabitants." Additionally, the judge found that Counts could have refused to answer his door, stated that he did not wish to speak with law enforcement, or ordered the officers to leave his residence. The judge ultimately found that once Counts opened the door and the officers saw him with a gun an exigent circumstance was presented as there was a risk of danger to the officers. The judge also noted the officers were aware that Counts was a convicted felon who was known to have guns. Based on this sequence of events, the judge ruled the officers had probable cause to detain Counts and then conduct the protective sweep. Finally, the judge found that once the officers observed drugs in plain view they took the necessary steps to procure the search warrant. Thus, the judge declined to suppress the evidence as there was a "reasonable search" that was "done pursuant to the constitutional protections afforded by the Fourth Amendment." Ultimately, the jury convicted Counts of possession with intent to distribute marijuana.

On appeal, the Court of Appeals summarily affirmed in an opinion pursuant to Rule 220(b) of the South Carolina Appellate Court Rules. *State v. Counts*, Op. No. 2012-UP-585 (S.C. Ct. App. filed Oct. 31, 2012). The court found the trial judge did not abuse her discretion in denying Counts' motion to suppress. *Id.* In support of this decision, the court cited state and federal precedent that permits law enforcement, who are not armed with a warrant, to knock on a person's door and ask to speak to the occupant of the residence as they do no more than what a private citizen might do. *Id.* The Court of Appeals did not rule on Counts' argument that law enforcement's "knock and talk" violated Article I, section 10 of the South Carolina Constitution. *Id.*

In his petition for rehearing, Counts challenged the court's ruling, but also pointed out that the court failed to address his argument regarding the heightened privacy protection afforded by the South Carolina Constitution. Following the denial of his petition for rehearing, this Court granted Counts' petition for a writ of certiorari to review the decision of the Court of Appeals.

## II.    Standard of Review

"On appeal from a motion to suppress on Fourth Amendment grounds, this Court applies a deferential standard of review and will reverse only if there is clear error." *Robinson v. State*, 407 S.C. 169, 180-81, 754 S.E.2d 862, 868 (2014), *cert. denied*, 134 S. Ct. 2888 (2014); *see State v. Tindall*, 388 S.C. 518, 520, 698 S.E.2d 203, 205 (2010) (recognizing that in criminal cases an appellate court sits to review errors of law only and are, therefore, bound by the trial court's findings unless clearly erroneous).

## III.    Discussion

### A.    Arguments

Counts asserts the Court of Appeals erred in affirming the trial judge's denial of his motion to suppress because law enforcement used the "knock and talk" technique to avoid the warrant requirement. Counts maintains that law enforcement violated his constitutional rights against unreasonable searches and seizures and unreasonable invasions of privacy.

Counts acknowledges that the "knock and talk" technique is not per se violative of the Fourth Amendment or the parallel provision in the South Carolina Constitution. However, he claims it can become so when officers, who do not have reasonable suspicion or probable cause, use the technique to circumvent the warrant requirement. In support of this claim, Counts cites *United States v. Johnson*, 170 F.3d 708 (7th Cir. 1999)[3] as providing the "proper analysis" to assess

---

[3] In *Johnson*, law enforcement received a citizen report that drug activity was taking place in an apartment complex. *Johnson*, 170 F.3d at 711. Based on this report, plain clothes officers went to the complex and intended to use the "knock and talk" technique on certain apartments. *Id.* As they prepared to knock on one apartment door, Johnson emerged at "virtually the same instant." *Id.* The officers stopped Johnson and asked whether he had any weapons. *Id.* at 712. When Johnson did not respond and refused an order to return to the apartment, the officers struggled with Johnson. *Id.* During the struggle, the officers found a gun and cocaine on Johnson's person. *Id.* On appeal, the Seventh Circuit Court of Appeals affirmed the district court's order granting Johnson's motion to suppress. Although the court referenced the "knock and talk" technique, it found that "[w]ithout reasonable suspicion, [law enforcement] cannot detain a person just

the constitutionality of the use of the "knock and talk" technique. Pursuant to *Johnson* and contrary to the trial judge's ruling, Counts asserts that law enforcement must have reasonable suspicion before they conduct a "knock and talk" at a person's residence.

Because Counts was the subject of an ongoing investigation, he believes the trial judge should have assessed whether the officers had reasonable suspicion, in light of the totality of the circumstances, to conduct the "knock and talk" at his residence. Had the judge done so, Counts claims there would have been evidence to grant his motion to suppress. Specifically, Counts posits six reasons to show the officers lacked reasonable suspicion: (1) the information given by the anonymous tipster was uncorroborated and unreliable; (2) the officers conducted the "knock and talk" with the hope of finding an exigent circumstance that would allow them to circumvent the warrant requirement; (3) the officers' actions "illustrate that they were doing more than a simple 'meet and greet' or investigation" of a complaint as they conducted surveillance with the assistance of other members of the Drug Suppression Team; (4) the Drug Suppression Team did not attempt a controlled buy from Counts or at his residence; (5) law enforcement created the exigent circumstance; and (6) the judge noted the inconsistency between Deputy Elliott's testimony that he saw a "blunt" from the doorway yet documented a different sequence of events in the incident report.

Alternatively, Counts claims the Court of Appeals erred in failing to analyze whether the heightened protection against unreasonable invasions of privacy

---

because that individual walks out of an apartment . . . even if some unspecified individual . . . thinks something fishy is sometimes going on there." *Id.* at 720.

For several reasons, we find Counts' reliance on *Johnson* is misplaced. Initially, as will be discussed, the Seventh Circuit's decision represents a minority position with respect to the propriety of the "knock and talk" technique under the Fourth Amendment. More importantly, Counts misinterprets the court's ruling. A close reading of the case reveals that the court did not rule that law enforcement must have reasonable suspicion before using the "knock and talk" technique. Rather, the Court applied the reasonable suspicion analysis established in *Terry v. Ohio*, 392 U.S. 1 (1968), to law enforcement's detention of the suspect who left the residence *prior* to law enforcement conducting the "knock and talk." Finally, the court in *Johnson* did not address any argument regarding the defendant's right to privacy. As a result, *Johnson* cannot serve as the basis for our analysis regarding Counts' right to privacy under the South Carolina Constitution.

afforded by Article I, section 10 of the South Carolina Constitution warranted suppression of the drug evidence.  Counts explains that there is a distinction between a "knock and talk" where an officer has reasonable suspicion and when an officer lacks reasonable suspicion prior to approaching a residence.  By implication, Counts asserts that a "knock and talk" that lacks reasonable suspicion, as in the instant case, is unconstitutional.

**B.      "Unreasonable Searches and Seizures"**

**a.      Fourth Amendment**

The Fourth Amendment to the United States Constitution protects a person's right to be free from unreasonable searches and seizures.  U.S. Const. amend. IV.  "Generally, the Fourth Amendment requires the police to have a warrant in order to conduct a search."  *Robinson v. State*, 407 S.C. 169, 185, 754 S.E.2d 862, 870 (2014), *cert. denied*, 134 S. Ct. 2888 (2014).  "Evidence seized in violation of the warrant requirement must be excluded from trial."  *Id.*

"However, a warrantless search may nonetheless be proper under the Fourth Amendment if it falls within one of the well-established exceptions to the warrant requirement."  *Id.*; *see State v. Brown*, 401 S.C. 82, 89, 736 S.E.2d 263, 266 (2012) (recognizing the following exceptions to the warrant requirement:  (1) search incident to a lawful arrest, (2) hot pursuit, (3) stop and frisk, (4) automobile exception, (5) the plain view doctrine, (6) consent, and (7) abandonment).  "The exigent circumstances doctrine provides an exception to the Fourth Amendment[']s protection against warrantless searches, but only where, from an objective standard, a compelling need for official action and no time to secure a warrant exists."  *State v. Abdullah*, 357 S.C. 344, 351, 592 S.E.2d 344, 348 (Ct. App. 2004); *see State v. Brown,* 289 S.C. 581, 587, 347 S.E.2d 882, 886 (1986) (acknowledging the exigent circumstances doctrine as an exception to the warrant requirement).  "For instance, a warrantless search is justified under the exigent circumstances doctrine to prevent a suspect from fleeing or where there is a risk of danger to police or others inside or outside a dwelling."  *Abdullah*, 357 S.C. at 351, 592 S.E.2d at 348 (citing *Minnesota v. Olson*, 495 U.S. 91, 100 (1990)).  "In such circumstances, a protective sweep of the premises may be permitted."  *Id.* (citing *Maryland v. Buie*, 494 U.S. 325, 337 (1990)).  "A 'protective sweep' is a quick and limited search of the premises, incident to an arrest and conducted to protect the safety of police officers or others."  *Maryland v. Buie*, 494 U.S. 325, 327 (1990).

"In parallel with the protection of the Fourth Amendment, the South Carolina Constitution also provides a safeguard against unlawful searches and seizures." *State v. Forrester*, 343 S.C. 637, 643, 541 S.E.2d 837, 840 (2001); S.C. Const. art. I, § 10. "The relationship between the two constitutions is significant because '[s]tate courts may afford more expansive rights under state constitutional provisions than the rights which are conferred by the Federal Constitution." *Forrester*, 343 S.C. at 643, 541 S.E.2d at 840 (quoting *State v. Easler*, 327 S.C. 121, 131 n.13, 489 S.E.2d 617, 625 n.13 (1997)). "Therefore, state courts can develop state law to provide their citizens with a second layer of constitutional rights." *Id.* "This relationship is often described as a recognition that the federal Constitution sets the floor for individual rights while the state constitution establishes the ceiling." *Id.* "Thus, this Court can interpret the state protection against unreasonable searches and seizures in such a way as to provide greater protection than the federal Constitution." *Id.* at 644, 541 S.E.2d at 840.

### b. "Knock and Talk" Technique

In the context of Fourth Amendment analysis, scholars have explained:

> One police tactic that courts have increasingly subjected to reasonableness review is the procedure known as "knock and talk." The "knock and talk" procedure is a common and seemingly innocuous procedure that police use proactively, making the procedure vulnerable to potential abuse. The "knock and talk" appears innocuous because courts do not generally consider its use a search and seizure, but rather an investigative tactic. The potential for abuse arises when police attempt to gain access for consensual searches and instead provoke exigencies that normally validate a warrantless search.

Bryan Abramoske, Note, *It Doesn't Matter What They Intended: The Need for Objective Permissibility Review of Police-Created Exigencies in "Knock and Talk" Investigations*, 41 Suffolk U. L. Rev. 561, 562 (2008) (footnotes omitted).

Despite the potential for abuse and the heightened expectation of privacy in one's home, the United States Supreme Court has recently reaffirmed the "knock and talk" technique as constitutionally permissible. *See Florida v. Jardines*, 133 S. Ct. 1409, 1415-16 (2013) ("We have accordingly recognized that 'the knocker on the front door is treated as an invitation or license to attempt an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds. . . . Thus, a

police officer not armed with a warrant may approach a home and knock, precisely because that is 'no more than any private citizen might do.' " (citations omitted)).

Moreover, nearly every federal circuit, including the Fourth Circuit Court of Appeals, has recognized the constitutional propriety of the "knock and talk" technique.  *See United States v. Cephas*, 254 F.3d 488, 493 (4th Cir. 2001) ("A voluntary response to an officer's knock at the front door of a dwelling does not generally implicate the Fourth Amendment, and thus an officer generally does not need probable cause or reasonable suspicion to justify knocking on the door and then making verbal inquiry.").  *See generally* Fern L. Kletter, Annotation, *Construction and Application of Rule Permitting Knock and Talk Visits Under Fourth Amendment and State Constitutions*, 15 A.L.R. 6th 515, 515 (2006 & Supp. 2015)  ("Although the ['knock and talk'] procedure is not per se violative of the Fourth Amendment and corresponding state constitutional provisions, police must conduct themselves in a manner that does not communicate to a reasonable person that he or she is not free to ignore the police presence, and police must remain in those areas of the property that are impliedly open to the public.").[4]

---

[4]  *See also United States v. Daoust*, 916 F.2d 757, 758 (1st Cir. 1990) ("A policeman may lawfully go to a person's home to interview him.  In doing so, he obviously can go up to the door." (citations omitted)); *United States v. Lucas*, 462 Fed. Appx. 48, 50 (2d Cir. 2012) (recognizing as constitutionally permissible officer's use of "knock and talk" in approaching defendant's apartment);  *In re Estate of Smith*, 318 F.3d 497, 519 (3d Cir. 2003) (noting that "courts generally recognize a 'knock and talk' exception to the warrant requirement"); *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001) ("Federal Courts have recognized the 'knock and talk' strategy as a reasonable investigative tool when officers seek to gain an occupant's consent to search or when officers reasonably suspect criminal activity."); *United States v. Thomas*, 430 F.3d 274, 277 (6th Cir. 2005) ("Consensual encounters do not lose their propriety, moreover, merely because they take place at the entrance of a citizen's home.  A number of courts, including this one, have recognized 'knock and talk' consensual encounters as a legitimate investigative technique at the home of a suspect or an individual with information about an investigation."); *United States v. Jerez*, 108 F.3d 684, 691-92 (7th Cir. 1997) (recognizing that a "knock and talk" is ordinarily consensual unless coercive circumstances exist); *United States v. Wells*, 648 F.3d 671, 679 (8th Cir. 2011) ("This principle permits police officers—consistent with the Fourth Amendment— to 'approach[ ] the front door to announce their presence,' make 'inquir[ies],' and 'request consent to search the remainder of the property,' 'commonly referred to as a 'knock and talk.' " (quoting *United States v. Weston*, 443 F.3d 661, 667 (8th Cir.

Similar to federal precedent, this Court has found that "police ha[v]e the investigative authority to approach the front door of [a] home in order to investigate [the] anonymous tip." *State v. Wright*, 391 S.C. 436, 445, 706 S.E.2d 324, 328 (2011).

Applying the above-outlined principles to the facts of the instant case, we find the Court of Appeals correctly affirmed the trial judge's denial of Counts' motion to suppress because the actions of law enforcement did not constitute an unreasonable search and seizure under either the state or federal constitution. We discern no error of law in the judge's analysis and there is evidence to support the judge's findings of fact that once Counts, a known felon, voluntarily opened the door, an exigent circumstance arose when the officers saw that he had a weapon. Significantly, Counts requested that the officers provide identification before he opened the door. Yet, even after they provided proof of their law enforcement authority, Counts opened the door armed with a handgun. Because there was a risk of danger to the officers, the officers were justified under the exigent circumstances doctrine to detain Counts and conduct a protective sweep of his residence. A search of Counts' person revealed a bag of marijuana. During the protective sweep, the officers also observed drugs and a scale in plain view, which provided them with probable cause to procure a search warrant. Accordingly, we affirm this portion of the Court of Appeals' decision.

## C. "Unreasonable Invasions of Privacy"

Our ruling, however, does not conclude the analysis as the question becomes whether the officers' actions constituted a violation of Counts' state constitutional right against unreasonable invasions of privacy.

---

2006))); *United States v. Cormier*, 220 F.3d 1103, 1109 (9th Cir. 2000) (holding that "no suspicion needed to be shown in order to justify the 'knock and talk' "); *United States v. Cruz-Mendez*, 467 F.3d 1260, 1264 (10th Cir. 2006) ("As commonly understood, a 'knock and talk' is a consensual encounter and therefore does not contravene the Fourth Amendment, even absent reasonable suspicion."); *United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir. 2006) ("The Fourth Amendment, which prohibits unreasonable searches and seizures by the government, is not implicated by entry upon private land to knock on a citizen's door for legitimate police purposes unconnected with a search of the premises.").

### a. South Carolina Invasion of Privacy Jurisprudence

As previously stated, the South Carolina Constitution provides citizens an express right to privacy. S.C. Const. art. I, § 10. But, other than the use of the word "unreasonable" to modify this right, there are no parameters concerning the right or a definition of what constitutes "unreasonable invasions of privacy." As a result, legal scholars interpreting the legislative history of this constitutional provision have concluded that "the drafters were depending upon the state judiciary to construct a precise meaning of this phrase." Jaclyn L. McAndrew, *Who Has More Privacy?: State v. Brown and Its Effect on South Carolina Criminal Defendants*, 62 S.C. L. Rev. 671, 694 (2011). As will be discussed, our state jurisprudence is scant on the right to privacy. Thus, this case presents us with an opportunity to further define this state constitutional right.

Although several appellate decisions in this state make a passing reference to the right to privacy,[5] our most comprehensive discussion to date is contained in *State v. Forrester*, 343 S.C. 637, 541 S.E.2d 837 (2001) and *State v. Weaver*, 374 S.C. 313, 649 S.E.2d 479 (2007).

In *Forrester*, the defendant was approached by law enforcement for questioning after officers observed the defendant exhibiting suspicious behavior at a local train station. *Forrester*, 343 S.C. at 640, 541 S.E.2d at 839. According to the investigating officer, he identified himself to the defendant who agreed to let him search her luggage. *Id.* Because the defendant was clutching her purse tightly, the officer asked to search the purse. *Id.* The defendant opened the purse to allow the officer to look inside. *Id.* at 641, 541 S.E.2d at 839. Without requesting permission to search the interior of the purse, the officer took the purse and tore open the lining at which time he found crack cocaine. *Id.* On appeal from her conviction, the defendant argued that she did not give consent to the officer to

---

[5] *See, e.g., State v. Herring*, 387 S.C. 201, 209, 692 S.E.2d 490, 494 (2009) ("Private residences are places in which an individual normally expects privacy free of governmental intrusion not authorized by a warrant, and that expectation is one society recognizes as justifiable. Accordingly, searches and seizures inside a home without a warrant are presumptively unreasonable absent exigent circumstances."); *State v. Houey*, 375 S.C. 106, 651 S.E.2d 314 (2007) (finding that requiring defendant, who was charged with second-degree CSC with a minor, to submit to testing for sexually transmitted diseases was not overly intrusive or so unreasonable as to render statutory authority for this test violative of the South Carolina Constitution).

search her purse and, thus, the crack cocaine was discovered in violation of the express right to privacy found in Article I, section 10 of the South Carolina Constitution. *Id.* at 645, 541 S.E.2d at 841. This Court disagreed, finding our state constitutional provision did not require informed consent prior to government searches. *Id.* at 647-48, 541 S.E.2d at 842-43.

In so ruling, we compared this state's right to privacy with the ten other states that have express right to privacy provisions in their constitutions. *Id.* at 646, 541 S.E.2d at 841-42. We noted, "South Carolina and five other states have their right to privacy provision included in the section prohibiting unreasonable search and seizures," which in turn "creates a distinct privacy right that applies both within and outside the search and seizure context." *Id.* at 644, 541 S.E.2d at 841. Consequently, this Court concluded that "[t]he South Carolina Constitution, with an express right to privacy provision included in the article prohibiting unreasonable searches and seizures, favors an interpretation offering a higher level of privacy protection than the Fourth Amendment." *Id.* at 645, 541 S.E.2d at 841. Notwithstanding the broader privacy protection afforded by our state constitutional provision, this Court ultimately rejected the defendant's argument that suspects must be informed of their right to refuse consent to search. *Id.* at 647-48, 541 S.E.2d at 842-43. Specifically, we stated, "while our state constitution may provide a higher level of protection in the search and seizure context, it does not go so far as to require informed consent prior to government searches." *Id.*

Although the Court found that our state constitution did not require the investigating officer to inform Forrester of her right to refuse giving consent to search her purse, the Court reversed Forrester's conviction. *Id.* at 648, 541 S.E.2d at 843. The Court found that the law enforcement officer "exceeded the scope of Forrester's consent when he proceeded beyond the visual inspection of the purse granted by Forrester to an intense physical examination of the purse." *Id.* As a result, the Court held that the crack cocaine should have been excluded at trial. *Id.*

Six years later, this Court again acknowledged the higher level of privacy protection afforded by our state constitution. In *Weaver*, the defendant was convicted of murder and possession of a weapon during the commission of a violent crime following a shooting at a nightclub. *Weaver*, 374 S.C. at 317, 649 S.E.2d at 480. The investigation of the shooting led law enforcement to the home of the defendant's cousin where they discovered the vehicle that had been driven by the defendant parked in the backyard. *Id.* at 317, 649 S.E.2d at 481. According to the defendant's cousin, the defendant had recently been at the home and asked for a change of clothes, some bleach, and a garbage bag. *Id.* The defendant then left the

home.  *Id.*  Upon finding the vehicle driven by the defendant, the investigating officer opened the door and discovered the inside of the vehicle was wet and smelled of bleach.  *Id.* at 318, 649 S.E.2d at 481.  The officer also found a "bag of wash" that smelled like bleach in a nearby area.  *Id.*  Based on this evidence, the officers impounded the vehicle and processed it.  *Id.*  The investigating officers found blood in the vehicle that matched that of the shooting victim.  *Id.*  On appeal, the defendant argued the evidence found in the vehicle should have been suppressed as it was the product of an impermissible warrantless search.  *Id.*

This Court rejected the defendant's contention, finding the warrantless search met the automobile exception to the Fourth Amendment.  *Id.* at 319-21, 649 S.E.2d at 482.  However, the Court also analyzed whether the search and seizure violated the defendant's right to privacy pursuant to the South Carolina Constitution.  *Id.* at 321, 649 S.E.2d at 483.  Citing *Forrester*, the majority noted the South Carolina Constitution affords a higher level of privacy protection than the Fourth Amendment.  *Id.*  Despite this broad protection, the majority declined to find the privacy provision required a warrant before the search and seizure of a vehicle located in the backyard of a private residence.  *Id.* at 322, 649 S.E.2d at 483.  The majority explained that "[t]he focus in the state constitution is on whether the invasion of privacy is reasonable, regardless of the person's expectation of privacy in the vehicle to be searched.  Once the officers have probable cause to search a vehicle, the state constitution's requirement that the invasion of one's privacy be reasonable will be met."  *Id.*

Justice Pleicones concurred in the result reached by the majority.  However, he wrote separately, and was joined by Chief Justice Toal, to express his disagreement with the majority's analysis of the vehicle seizure under the South Carolina Constitution.  *Id.* at 324, 649 S.E.2d at 484.  Justice Pleicones found the majority's analysis was incomplete as he believed it was necessary to "further analyze the impact of [the privacy] provision on the second prong of a Fourth Amendment automobile analysis," which included "the expectation of privacy in a private automobile."  *Id.* at 325, 649 S.E.2d at 484-85.  Under the facts of the case, Justice Pleicones found no state constitutional violation because the defendant was not the owner of the vehicle that was seized and the vehicle was not parked at the defendant's residence.  *Id.* at 326, 649 S.E.2d at 485.  Justice Pleicones, however, emphasized that "[o]ur state constitution's provision protecting unreasonable invasions of privacy necessarily requires some analysis of the privacy interests involved when a warrantless seizure is made on private property."  *Id.*

As demonstrated by our decisions in *Forrester* and *Weaver*, this Court has sought to guard our state citizens' constitutional right to privacy but still give credence to the government's interest in conducting legitimate searches. While *Forrester* and *Weaver* provide some general guidance, these decisions are not dispositive of the instant case. Therefore, we have looked to other state jurisdictions to see how those courts address the propriety of the "knock and talk" technique in the context of a state right to privacy.

**b.      Other Jurisdictions**

Courts in other jurisdictions have assessed what law enforcement procedure is necessary to protect a citizen's right to privacy. Specifically, the courts have analyzed whether law enforcement needs to: (1) have probable cause or reasonable suspicion to approach the private residence; or (2) inform the citizen of his or her right to refuse consent to search. *See, e.g.*, *State v. Brown*, 156 S.W.3d 722 (Ark. 2004) (holding, pursuant to state constitutional implicit right to privacy, officers using the "knock and talk" technique must apprise the homeowner of his right to refuse to consent to search); *State v. Sanders*, 374 So. 2d 1186 (La. 1979) (finding "knock and talk" did not violate right to privacy even though no cause to arrest existed when resident opened the door); *State v. Ferrier*, 960 P.2d 927, 934 (Wash. 1998) (concluding "knock and talk" procedure violated state constitutional right to privacy where law enforcement failed to advise resident that she could refuse to give consent to search her home; stating, "unlike a search warrant, a search resulting from a knock and talk need not be supported by probable cause, or even reasonable suspicion"). *See generally* Fern L. Kletter, Annotation, *Construction and Application of Rule Permitting Knock and Talk Visits Under Fourth Amendment and State Constitutions*, 15 A.L.R. 6th 515, §§ 33-34 (2006 & Supp. 2015) (collecting state and federal cases analyzing the use of the "knock and talk" technique under federal and state constitution).

After reviewing the analyses in other jurisdictions in conjunction with *Forrester* and *Weaver*, we are not persuaded by the decisions of other states that require an officer to inform a citizen of his or her right to refuse consent to search as we specifically rejected this requirement in another context. Even though *Forrester* involved a search of the contents of the defendant's purse, this Court used strong language to disavow the need for informed consent prior to government searches. *See Forrester*, 343 S.C. at 647-48, 541 S.E.2d at 842-43 ("[W]hile our state constitution may provide a higher level of protection in the search and seizure context, it does not go so far as to require informed consent prior to government searches."). We decline to depart from this position.

Therefore, we find the lack of an admonition in the instant case did not vitiate Counts' voluntary consent to search.

However, as the concurrence emphasized in *Weaver*, "[o]ur state constitution's provision protecting unreasonable invasions of privacy *necessarily requires* some analysis of the privacy interests involved when a warrantless seizure is made on private property." *Weaver*, 374 S.C. at 326, 649 S.E.2d at 485 (Pleicones, J., concurring) (emphasis added).  Because the privacy interests in one's home are the most sacrosanct, we believe there must be some threshold evidentiary basis for law enforcement to approach a private residence.  Otherwise, we foresee the potential for abuse if law enforcement targets a neighborhood and indiscriminately knocks on doors with the hope of discovering contraband without a search warrant.  Although the State maintains these encounters are entirely consensual, we cannot ignore the nature of the "knock and talk" procedure.  In contrast to a routine sales call, the "knock and talk" technique is inherently coercive as it is conducted by law enforcement and not a private citizen.

Yet, rather than enunciating an unyielding rule or eliminating the "knock and talk" technique in its entirety, we hold that law enforcement must have reasonable suspicion of illegal activity at a targeted residence prior to approaching the residence and knocking on the door.  As with our previous right-to-privacy decisions, we find this rule safeguards the express constitutional right against unreasonable invasions of privacy and does not hamper law enforcement in their investigative efforts.

Furthermore, we believe this decision does not exceed the bounds of our judicial authority as conferred by the drafters of the right-to-privacy provision.  In fact, our ruling effectuates the intent of the Legislature to afford heightened protection against intrusions into a citizen's home.  As evidenced by the enactment of the "Protection of Persons and Property Act," the Legislature has recognized the sanctity of one's home and sought to ensure a citizen's right to protect it.  S.C. Code Ann. §§ 16-11-410 to -450 (Supp. 2014).[6]  Our ruling acknowledges this

---

[6] The Act codifies the common law Castle Doctrine and provides immunity from criminal prosecution and civil action for the use of deadly force in those circumstances that are permitted by the Act, including the defense of one's home. *See* S.C. Code Ann. § 16-11-420(A) (Supp. 2014) (acknowledging that the Legislature intended "to codify the common law Castle Doctrine[,] which recognizes that a person's home is his castle and to extend the doctrine to include an occupied vehicle and the person's place of business"); *id.* § 16-11-450(A)

legislative pronouncement and gives greater protection to South Carolina citizens than that of the federal constitution.

## D.     Application

Applying this rule to the facts of the instant case, we find the trial judge correctly denied Counts' motion to suppress. Although the judge did not employ our newly enunciated rule, we nevertheless conclude that her findings of fact establish that law enforcement had reasonable suspicion of illegal activity prior to conducting the "knock and talk" at Counts' residence. Notably, law enforcement received two separate anonymous tips from citizens who alleged that Counts was selling drugs. These tips also identified vehicles driven by Counts, his phone number, and his use of multiple identities. Through their investigation, the officers confirmed that Counts had two false identification cards on record and had prior drug convictions. In light of this evidence, the officers were not randomly knocking on Counts' door but had reasonable suspicion to support their decision to approach Counts' residence and conduct the "knock and talk."

As previously discussed, the officers were justified under the exigent circumstances doctrine to detain Counts and conduct a protective sweep of his residence. The drugs and scale found during the search of Counts' person and the protective sweep of his residence established probable cause for the officers to procure a search warrant. Accordingly, we affirm Counts' conviction and sentence as the evidence that formed the basis of the drug charge was properly admitted for the jury's consideration.

## IV.     Conclusion

Given the extensive precedent supporting the constitutional propriety of the "knock and talk" technique, we hold the Court of Appeals correctly affirmed the judge's finding that there was no unreasonable search and seizure under either the Fourth Amendment to the United States Constitution or the parallel provision of the South Carolina Constitution. The Court of Appeals, however, erred in failing to rule on Counts' argument regarding the heighten privacy protection afforded by the South Carolina Constitution. For our state constitutional right to privacy to

---

(providing that "[a] person who uses deadly force as permitted by the provisions of this article or another applicable provision of law is justified in using deadly force and is immune from criminal prosecution and civil action for the use of deadly force . . . .").

have any significance, we believe there must be some minimum evidentiary standard met before law enforcement conduct a warrantless search of a South Carolina citizen's home.  Therefore, we hold that law enforcement must have reasonable suspicion of illegal activity before approaching the targeted residence and conducting the "knock and talk" investigative technique.[7]

Here, there is evidence that law enforcement officers met this threshold requirement before conducting the "knock and talk" at Counts' residence. Moreover, the officers were justified under the exigent circumstances doctrine to detain Counts and conduct a protective sweep of his residence.  The drugs and

---

[7] Although the concurrence agrees with our ultimate conclusion, the concurrence "would not require law enforcement officers to have a reasonable suspicion of illegal activity occurring in the home in order to 'knock and talk.'"  We should not lose sight of the fact that "knock and talk" is a **criminal** investigative technique used for the sole purpose of discovering criminal activity.  In Justice Pleicones' concurrence in *Weaver*, he expressly stated that "[o]ur state constitution's provision protecting unreasonable invasions of privacy *necessarily requires* some analysis of the privacy interests involved when a warrantless seizure is made on private property."  *Weaver*, 374 S.C. at 326, 649 S.E.2d at 485 (emphasis added).  We believe the privacy interests in one's home are precisely what our state constitutional provision was intended to protect.  Further, as supporting precedent, the concurrence cites *Bash*.  However, the court in *Bash* did not analyze whether the "knock and talk" violated our state right to privacy.  Rather, the decision involved a determination of whether law enforcement conduct, which was initiated with a "knock and talk," violated the Fourth Amendment prohibition against unreasonable searches and seizures.

Finally, the concurrence's fear that our decision will prevent law enforcement from conducting "welfare checks" at residences is unfounded.  A "welfare check" is not a criminal investigative technique.  As its name implies, a "welfare check" is conducted by law enforcement based upon concern for a person's welfare not to inquire about illegal activity at the residence.  In the instance of a "welfare check," the implicit license to approach a home as referenced in *Florida v. Jardines*, 133 S. Ct. 1409 (2013) is applicable.  Thus, our decision should not be misconstrued, as done by the concurrence, to prevent law enforcement from conducting "welfare checks" at residences.  We emphasize that our holding is limited to requiring law enforcement to have reasonable suspicion of illegal activity before approaching a targeted residence and conducting the "knock and talk" criminal investigative technique.

scale found during the search of Counts' person and the protective sweep of his residence established probable cause for the officers to procure a search warrant. As a result, we find the evidence that formed the basis of the drug charge was properly admitted for the jury's consideration. Accordingly, the decision of the Court of Appeals is

**AFFIRMED AS MODIFIED.**

**HEARN and KITTREDGE, JJ., concur. PLEICONES, J., concurring in a separate opinion in which TOAL, C.J. concurs.**

**JUSTICE PLEICONES:**  I concur in the majority's decision to affirm petitioner's conviction and sentence, but write separately as I do not believe that the privacy clause of S.C. Const. art. I, § 10 (2007) altered the common understanding that a law enforcement officer, like other individuals, has an "implicit license . . . to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave."  *Florida v. Jardines*, 133 S.Ct. 1409, 1415 (2013).  An officer who does not have a warrant "may approach a home and knock precisely because that is 'no more than any private citizen might do.'"  *Id*. at 1416 citing *Kentucky v. King*, 131 S.Ct. 1849, 1862 (2011).

While I appreciate the majority's thorough treatment of the subject, and share their concern at the potential for coercion when a citizen is confronted by officers on her porch,[8] I would not require law enforcement officers to have a reasonable suspicion of illegal activity occurring in the home in order to "knock and talk."  *Cf. State v. Bash*, Op. No. 5314 (S.C. Ct. App. filed April 22, 2015) (analyzing "knock and talk" under the Fourth Amendment).  Most particularly, I would not prevent law enforcement from conducting welfare checks at residences.  However, were they to conduct the type of neighborhood-wide sweep feared by the majority, I would find that type of conduct indicative of coercion that could, in certain circumstances, vitiate the individual's consent to a search of her home.

I concur in the majority's decision to affirm the decision of the Court of Appeals.

**TOAL, C.J. concurs.**

---

[8] I do not agree, however, that the "Protection of Persons and Property Act" provides support for the majority's reading of the constitution as the Act specifically exempts from the presumption of reasonable fear "a law enforcement officer who enters or attempts to enter a dwelling or residence . . . in the performance of his official duties . . . ."  S.C. Code Ann. § 16-11-440(B)(4) (Supp. 2014); *see also* § 16-11-450(A) (Supp. 2014) (no immunity for killing of officer).